[No. 29464-1-III.   Division Three.   February 16, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. RONALD D. ZIGAN, *Appellant*.

*Tanesha La Trelle Canzater*, for appellant.

*D. Angus Lee, Prosecuting Attorney*, for respondent.

¶1 BROWN, J. — Ronald D. Zigan appeals his vehicular homicide exceptional sentencing based on egregious lack of remorse and rapid recidivism. He contends (1) the State failed to prove egregious lack of remorse beyond a reason-

able doubt, (2) the RCW 9.94A.535(3)(t) rapid recidivism language is constitutionally vague, and (3) his exceptional sentence lacked compelling reasons. In his statement of additional grounds for review (SAG), he argues he was denied effective assistance of counsel. We affirm.

## FACTS

¶2 On July 19, 2009, Jeff and Mildred Kreider were riding their motorcycles when Mr. Zigan's vehicle struck Ms. Kreider head on in her lane of travel, killing her instantly. Mr. Zigan was then driving under the influence of alcohol and/or drugs and was reckless. He was then under community supervision following his release from jail in mid-May for violating sentencing conditions for a prior crime. Mr. Kreider saw the accident in his rear view mirror. He ran to his wife and found her dead. Mr. Zigan asked Mr. Kreider, "What are you doing in my lane?" Report of Proceedings (RP) (Sept. 1, 2010) at 18. Mr. Kreider responded, "[Y]ou've killed my wife, you've just destroyed my world." *Id.* at 87. While arguing, Mr. Zigan asked Mr. Kreider, "[A]re you ready to bleed?" *Id.* at 100.

¶3 While talking with responding officers, Mr. Zigan was smiling and laughing. Officers transported Mr. Zigan to the hospital for a blood draw. There, an officer walked up behind him. Startled, Mr. Zigan declared, "[Y]ou scared me!" *Id.* at 150. The officer responded, "[W]ell, that's because I'm a ninja." *Id.* Mr. Zigan warned, "[Y]ou'd better not ride one of those, I may kill you." *Id.* The officer thought Mr. Zigan was referring to a Kawasaki Ninja motorcycle and felt this was an ill-conceived attempt at humor. Later, when at the county jail, Mr. Zigan's community corrections officer escorted him to an area where inmates were working. Mr. Zigan smiled and waved at the inmates and said, "[F]ellows, if you hit someone on a motorcycle, don't get caught." *Id.* at 71.

¶4 The State charged Mr. Zigan with vehicular homicide, alleged aggravating circumstances, and notified him of its

intent to seek an aggravated exceptional sentence. Mr. Zigan pleaded guilty to the vehicular homicide charge but challenged the aggravating circumstances in a bench trial. There, the State produced the above facts to show Mr. Zigan displayed an egregious lack of remorse when reoffending shortly after his release on May 12, 2009. Mr. Zigan defended with evidence from a psychologist who reported Mr. Zigan suffered from posttraumatic stress disorder, alcohol dependence, polysubstance dependence, and antisocial personality traits related to his substance abuse. The psychologist opined Mr. Zigan was suffering from an acute stress reaction at the time of the accident, doing and saying things in the moment that were not thought out and did not reflect his accurate feelings. He concluded Mr. Zigan felt remorse for the victim and for the victim's family, and had genuine feelings of responsibility for what happened.

¶5 The trial court found the existence of both aggravating factors and, after expressing reservations about the meaning of rapid recidivism, sentenced Mr. Zigan to an exceptional 180-month sentence. He appealed.

## ANALYSIS

### A. Lack of Remorse

¶6 The issue is whether the trial court erred in concluding the presence of the aggravating factor of egregious lack of remorse beyond a reasonable doubt.

¶7 The facts supporting an aggravating factor must be proved to a jury beyond a reasonable doubt. RCW 9.94A.537(3). We use the same standard of review for the sufficiency of the evidence of an aggravating factor as we do for the sufficiency of the evidence of the elements of a crime. *State v. Yarbrough*, 151 Wn. App. 66, 96, 210 P.3d 1029 (2009). Under this standard, we review the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the presence of

the aggravating circumstances beyond a reasonable doubt. *State v. Yates*, 161 Wn.2d 714, 752, 168 P.3d 359 (2007). If a statute is clear on its face, its meaning is to be derived solely from the plain language of the statute. Legislative definitions included in the statute are controlling, but in the absence of a statutory definition, we will give a term its plain and ordinary meaning ascertained from a standard dictionary. *State v. Watson*, 146 Wn.2d 947, 954-55, 51 P.3d 66 (2002).

¶8 The controlling statute required the court to find Mr. Zigan "demonstrated or displayed an egregious lack of remorse." RCW 9.94A.535(3)(q). The parties dispute whether the evidence showed Mr. Zigan's actions rose to the legally required level of egregiousness. Absent a statutory definition, we will give terms their dictionary meanings. Washington cases on the subject are instructive.

¶9 In *State v. Ross*, 71 Wn. App. 556, 563-64, 861 P.2d 473 (1993), the court found the State supported the egregious lack of remorse factor by showing that Mr. Ross continued to blame the justice system for his crimes and that his statement that he was sorry was not credible. "Whether a sufficient quantity or quality of remorse is present in any case depends on the facts." *Id.* at 563. Another court found a defendant's lack of remorse sufficiently egregious where he bragged and laughed about the murder, thought the killing was funny, joked about being on television for the murder, and told police he felt no remorse. *State v. Erickson*, 108 Wn. App. 732, 739-40, 33 P.3d 85 (2001). In another case, the court found egregious conduct when a woman joked with her husband's killer about sounds her husband made after the killer shot him and went to meet a boyfriend's family 10 days after her husband's death. *State v. Wood*, 57 Wn. App. 792, 795, 790 P.2d 220 (1990).

¶10 Here, Mr. Zigan asked Mr. Kreider if he was "ready to bleed?" moments after Mr. Kreider's wife died. RP (Sept. 1, 2010) at 100. Mr. Zigan was smiling and laughing

while talking to officers at the crime scene. He later joked with one of the officers at the hospital that he better not ride a Ninja motorcycle because he might get killed by him too. At the jail, Mr. Zigan smiled and waved at the inmates and said, "[F]ellows, if you hit someone on a motorcycle, don't get caught." *Id.* at 71. While Mr. Zigan presented expert testimony explaining away his behavior, those sorts of determinations are left to the trier of fact and will not be disturbed on appeal. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Based on the similarities in *Ross*, *Erickson*, and *Wood*, and taking *Ross'* guidance regarding the sufficient quantity or quality of remorse as being dependent on the facts, we conclude Mr. Zigan's conduct is sufficiently egregious to support exceptional sentencing.

## B. Rapid Recidivism

¶11 The issue is whether, considering the "shortly after" language in RCW 9.94A.535(3)(t), the rapid recidivism aggravator is unconstitutionally vague.

¶12 We review de novo a challenge to the constitutionality of a statute. *State v. Shultz*, 138 Wn.2d 638, 643, 980 P.2d 1265 (1999). Where the statute does not impinge on First Amendment rights, we evaluate a vagueness challenge "by examining the statute as applied under the particular facts of the case." *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992). Statutes are presumed constitutional. *City of Spokane v. Vaux*, 83 Wn.2d 126, 129, 516 P.2d 209 (1973). When a statute does not define terms alleged to be unconstitutionally vague, we "may 'look to existing law, ordinary usage, and the general purpose of the statute' to determine whether 'the statute meets constitutional requirements of clarity'." *State v. Hunt*, 75 Wn. App. 795, 801, 880 P.2d 96 (1994) (quoting *State v. Russell*, 69 Wn. App. 237, 245, 848 P.2d 743 (1993)).

¶13 Under RCW 9.94A.535(3)(t), a sentencing court may impose an aggravated exceptional sentence after a

finding that "[t]he defendant committed the current offense shortly after being released from incarceration." The term "shortly after" is not defined. Mr. Zigan argues the phrase "shortly after" is an inherently uncertain term. A statute violates the due process clause if (1) it " 'does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed' " or (2) it " 'does not provide ascertainable standards of guilt to protect against arbitrary enforcement.' " *State v. Williams*, 144 Wn.2d 197, 203, 26 P.3d 890 (2001) (internal quotation marks omitted) (quoting *City of Bellevue v. Lorang*, 140 Wn.2d 19, 30, 992 P.2d 496 (2000)).

¶14 Several courts have addressed the term "shortly after" as referenced in RCW 9.94A.535(3)(t). In *State v. Butler*, 75 Wn. App. 47, 876 P.2d 481 (1994), the defendant committed second degree robbery and an attempted second degree rape on the same day that he was released from prison after serving a sentence for first degree robbery. The court upheld the exceptional sentence. *Id.* at 55. In *State v. Hughes*, 154 Wn.2d 118, 141-42, 110 P.3d 192 (2005), the defendant, less than three months after being released from custody, had committed the same offense against the same victim. In reversing, the *Hughes* court did not discuss the validity of the factor but solely the absence of a jury determination. In *State v. Saltz*, 137 Wn. App. 576, 579, 585, 154 P.3d 282 (2007), the defendant, on the 30-day anniversary of his release from jail after serving a sentence for violating a no-contact order, committed malicious mischief against the same victim. The exceptional sentence was affirmed. *Id.* at 586. Finally, in *State v. Combs*, 156 Wn. App. 502, 232 P.3d 1179 (2010), this court held that an eluding offense committed six months after release from prison for drug possession is not an offense committed " 'shortly after being released.' " *Id.* at 506 (quoting *Saltz*, 137 Wn. App. at 585). But, the court held, "We do not set an outer time limit on what constitutes a short period of time. That period will vary with the circumstances of the crime involved." *Id.*

¶15 Based on the above cases, RCW 9.94A-.535(3)(t) requires some subjective evaluation. But that a law requires subjective evaluation to determine whether the enactment has been violated does not mean the law is unconstitutional. *City of Spokane v. Douglass*, 115 Wn.2d 171, 181, 795 P.2d 693 (1990). As applied here, RCW 9.94A.535(3)(t) is not vague. Mr. Zigan committed the offense just over two months after his incarceration. No reasonable person could believe that the circumstances presented here constitute anything other than "[t]he defendant committed the current offense shortly after being released from incarceration." RCW 9.94A.535(3)(t). Thus, the term is not unconstitutionally vague as applied to the facts.

## C. Substantial and Compelling Reasons

¶16 The issue is whether the trial court erred in deciding sufficient evidence supported the aggravating factors to raise substantial and compelling reasons for departing from a standard range sentence.

¶17 A trial court "may impose a sentence outside the standard sentence range for an offense if it finds . . . that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. In RCW 9.94A.535, the legislature created a list of aggravating circumstances constituting substantial and compelling reasons for an upward departure from the sentencing guidelines. As discussed above, both egregious lack of remorse and rapid recidivism are listed reasons to justify an aggravated exceptional sentence. RCW 9.94A.535(3)(q), (t). The sentencing court found Mr. Zigan was not remorseful and committed the current offense shortly after being released from jail. While Mr. Zigan argues his conduct was not materially different from other defendants' conduct, the trial court found otherwise. The findings support the trial court's conclusion that substantial and compelling reasons

exist to impose an exceptional sentence pursuant to RCW 9.94A.535. In sum, we hold the trial court did not err in concluding an exceptional sentence was warranted.

## D. SAG

¶18  Mr. Zigan's pro se SAG concerns relate to ineffective assistance under the Sixth Amendment because he asserts defense counsel failed to (1) request a venue change, (2) call a witness, and (3) adequately investigate officer statements.

¶19  Claims of ineffective assistance are mixed questions of fact and law reviewed by us de novo. *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). To prevail on his ineffective assistance claim, Mr. Zigan must satisfy the two-pronged test under *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If a defendant fails to establish either prong, we need not inquire further. *State v. Hendrickson*, 129 Wn.2d 61, 77, 917 P.2d 563 (1996). First, he must show counsel's representation fell below an objective standard of reasonableness. *Id.* Solely legitimate trial strategy constitutes reasonable performance. *State v. Aho*, 137 Wn.2d 736, 745, 975 P.2d 512 (1999). Second, he must show the deficient performance was prejudicial. *Hendrickson*, 129 Wn.2d at 78. Prejudice occurs when it is reasonably probable that but for counsel's errors, " 'the result of the proceeding would have been different.' " *State v. Lord*, 117 Wn.2d 829, 883-84, 822 P.2d 177 (1991) (quoting *Strickland*, 466 U.S. at 694). We presume effective representation, and Mr. Zigan must show no legitimate strategic or tactical reason existed for the challenged conduct. *State v. McFarland*, 127 Wn.2d 322, 335-36, 899 P.2d 1251 (1995).

¶20  Under RCW 4.12.030(2), "[t]he court may . . . change the place of trial when . . . there is reason to believe that an impartial trial cannot be had therein." Mr. Zigan relies on information outside this court's record to argue an

impartial jury could not be had in Grant County. We do not, on direct appeal, consider matters outside the record. *McFarland*, 127 Wn.2d at 335. Nothing in this record shows Mr. Zigan requested his counsel to call certain witnesses, or that his counsel failed to investigate officer statements. Any claim supported by facts outside this record is best raised in a personal restraint petition. *McFarland*, 127 Wn.2d at 338 n.5. Therefore, Mr. Zigan's SAG lacks merit based on our record.

¶21 Affirmed.

SWEENEY and SIDDOWAY, JJ., concur.

Review denied at 174 Wn.2d 1014 (2012).