FILED
COURT OF APPEALS
DIVISION II

2015 AUG 18 AM 9: 04

STATE OF WASHINGTON

BY_____
BEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45955-8-II |
| Respondent, | |
| v. | |
| JOSEPH DEAN HUDSON, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — Joseph Dean Hudson appeals his convictions and sentence for vehicular homicide and vehicular assault after a retrial. He argues that (1) the trial court erred by admitting evidence that we suppressed after Hudson's first appeal and (2) there was insufficient evidence to support the jury's finding that he acted with an egregious lack of remorse. We hold that (1) the trial court admitted no suppressed evidence and (2) sufficient evidence exists to support the jury's finding that Hudson acted with an egregious lack of remorse. Accordingly, we affirm Hudson's convictions and sentence.

## FACTS

### I. BACKGROUND FACTS

In April 2009, Hudson and his then-girlfriend, Paula Charles, met two friends—Tommy Underwood and Leon Butler—at a bar to have a few drinks. They left the bar in Charles's vehicle.

At about 1:00 AM, the car went off the road, down a seven-foot embankment, rolled twice, and stopped about 100 feet from Kenneth Grover's home. Grover heard the crash from his bedroom and "hollered" out the window, asking if anybody was hurt. 1 Report of Proceedings (RP) at 89. He heard a calm, male voice answer, "[N]o." 1 RP at 90. Grover got dressed, went out to investigate, and discovered Butler climbing out of the rear driver's side window. Butler was frantic and limping when he emerged from the vehicle. Grover and Butler found an unresponsive Charles. Grover then discovered Underwood, who died within minutes of the accident.

Butler and Grover could not locate Hudson. Hudson returned to the accident scene about two hours later. In order to separate Hudson from several of Underwood's family members who had assembled, Trooper Ben Blankenship took Hudson to his patrol car. Several minutes later, Sergeant Sam Ramirez ordered his troopers to arrest everyone who he thought had been in the vehicle, including Charles, Butler, and Hudson. They complied. Later that night Charles told Detective Dan Presba that when the group left the bar, she was in the front passenger seat and Hudson was driving.

## II. First Trial and Appeal

In January 2010, the State charged Hudson with vehicular homicide and vehicular assault and added an aggravating factor alleging that Hudson displayed an egregious lack of remorse. At the first trial, the jury convicted Hudson on both charges and found an egregious lack of remorse for both charges.

Hudson appealed his convictions and we held that Hudson's arrest was invalid and suppressed any "evidence obtained as a result of his arrest." *State v. Hudson*, noted at 168 Wn. App. 1023, slip op. at 7 (2012). In the prior decision, we enumerated the specific pieces of evidence that should have been suppressed because they were the fruits of Hudson's illegal arrest:

> (1) Hudson's evasive and inconsistent statements to Trooper Blankenship, (2) his blood-alcohol level, (3) his admission of guilt and statement that his stomach hurt to Detective Presba, (4) photographs of and testimony about Hudson's injuries, and (5) a recording of Hudson's phone call from the jail.

*Hudson*, slip op. at 8. We reversed Hudson's convictions and remanded for a new trial. *Hudson*, slip op. at 9.

### III. RETRIAL

In November 2013, prior to Hudson's second trial, the trial court granted the State's motion to compel Hudson to provide a deoxyribonucleic acid (DNA) sample, based in part on Butler's sworn statement that Hudson had been driving. A forensic DNA scientist with the Washington State Patrol Crime Lab tested Hudson's new DNA sample and matched it to blood found on the inside of the driver's door of the vehicle.

At trial, the witnesses testified consistent with the above background facts. Sergeant Ramirez also testified that he did not remember whether Hudson appeared injured but that he could smell the odor of intoxicants on Hudson and noticed that Hudson was speaking as if he were intoxicated and was "swaying" from side to side. 1 RP at 148. Hudson did not object to this testimony.

Detective Presba, a collision reconstruction expert, opined that Charles, Underwood, and Butler had not been driving. Detective Presba concluded that, in his opinion, Hudson was the driver. Hudson did not object to this testimony.

Trooper Blankenship also testified that when he first approached Hudson, he noticed the odor of intoxicants, that Hudson's speech patterns were off, and that Hudson had brush and other debris in his hair. As Trooper Blankenship walked Hudson to his patrol car in order to separate Hudson from Underwood's family members, Hudson told Trooper Blankenship that "his back was sore." 2 RP at 210.

Hudson objected to Trooper Blankenship's testimony and moved for a mistrial, arguing that Trooper Blankenship had referred to suppressed evidence "twice." 2 RP at 210. The trial court stated that it wanted to clarify the moment of Hudson's arrest because evidence obtained after his arrest should be suppressed. Outside the jury's presence, both Hudson and the State questioned Trooper Blankenship, who stated that he did not arrest Hudson until he had been secured in the back of the patrol car for at least five minutes. Hudson stated he was "satisfied" that Trooper Blankenship's testimony had been proper, and the trial court then denied his motion for a mistrial. 2 RP at 217.

After the second trial, the jury convicted Hudson on both charges and also found that he acted with an egregious lack of remorse as to both charges. Hudson appeals his convictions and sentence.

ANALYSIS

I. LAW OF THE CASE AND SUPPRESSED EVIDENCE

First, Hudson argues that the trial court violated the law of the case doctrine when it admitted evidence that we suppressed in Hudson's first appeal. We hold that the trial court did not violate the law of the case doctrine because it admitted no evidence in the retrial that was suppressed in the first appeal.

Under the law of the case doctrine, an appellate court's holding must be followed "in all of the subsequent stages of the same litigation." *State v. Schwab*, 163 Wn.2d 664, 672, 185 P.3d 1151 (2008). We previously held that the police did not have probable cause to arrest Hudson and suppressed "the evidence obtained as a result of his arrest." *Hudson*, slip op. at 7. We review a trial court's conclusions of law regarding whether evidence should be suppressed de novo. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

Hudson argues that Sergeant Ramirez, Detective Presba, and Trooper Blankenship testified to facts that should have been suppressed under our prior decision. We disagree.

Hudson's argument here is an attempt to expand the specific list of suppressed evidence that we enumerated in our prior decision into broad categories of types of information that must be suppressed regardless of whether they were actually "obtained as a result of his [unlawful] arrest." *Hudson*, slip op. at 7. But this argument is misplaced. In our prior decision, we did not suppress *all* evidence of Hudson's injuries or *all* evidence of evasive and inconsistent statements. *Hudson*, slip op. at 8. We suppressed evidence of injuries or evasive and inconsistent statements— as well as any other evidence—that were the "*fruits of his arrest*." *Hudson*, slip op. at 8 (emphasis added).

5

First, at the retrial, Sergeant Ramirez testified that (1) he could not "recall if [Hudson] had any injuries" but could smell an odor of intoxicants when he approached him, and (2) Hudson exhibited several other signs of intoxication. 1 RP at 146. The other signs of intoxication included affected speech patterns and "swaying." 1 RP at 148. However, Sergeant Ramirez made each of these observations before he told Trooper Blankenship to secure Hudson in his patrol car and before Hudson was arrested. Therefore, Sergeant Ramirez's testimony and observations were not "evidence obtained as a result of [Hudson's] arrest" and were not suppressed in Hudson's first appeal. *Hudson*, slip op. at 7.

Second, Detective Presba opined that, based on the December 2013 DNA report, Charles, Underwood, and Butler were not driving the vehicle when it crashed. Hudson claims that this evidence was improper because it "implies that Presba also considered Hudson's DNA," which should have been suppressed. Br. of Appellant at 10. But Detective Presba lawfully obtained a DNA sample from Hudson pursuant to the trial court's November 2013 order—which Hudson does not challenge. Hudson's DNA sample was not "evidence obtained as a result of his arrest" and, therefore, not suppressed in Hudson's first appeal. *Hudson*, slip op. at 7.

Third, as Trooper Blankenship walked Hudson to his patrol car, he asked Hudson if he was injured and Hudson responded that "his back was sore." 2 RP at 210. Trooper Blankenship also inquired about whether Hudson was involved in the accident and Hudson said, "[N]o." 2 RP at 225. However, Blankenship took Hudson to his patrol car to separate him from Underwood's family members who were gathering and causing a commotion and not because Hudson was under arrest at that time. Because Hudson was not under arrest or in custody, the statements he made to

Trooper Blankenship were, again, not "evidence obtained as a result of his arrest" and were not suppressed by our prior decision in this case.[1] *Hudson*, slip op. at 7.

The evidence that Hudson argues should have been suppressed in this case was not the fruit of Hudson's unlawful arrest. Accordingly, we hold that the trial court did not violate the law of the case doctrine because it did not admit evidence that was suppressed in Hudson's first appeal.

## II. EGREGIOUS LACK OF REMORSE SPECIAL VERDICT

Hudson next argues that there is insufficient evidence to support the jury's special verdict finding that he acted with an egregious lack of remorse. Specifically, Hudson claims that the facts here are distinguishable from other cases where an egregious lack of remorse special verdict was deemed appropriate. We hold that there is sufficient evidence to support the jury's special verdicts finding an egregious lack of remorse.

Whether the defendant demonstrated an egregious lack of remorse depends on the specific facts of each case. *State v. Ross*, 71 Wn. App. 556, 563, 861 P.2d 473, 883 P.2d 329 (1993). We review a jury's special verdict finding of an egregious lack of remorse under a sufficiency of the evidence standard. *State v. Stubbs*, 170 Wn.2d 117, 123, 240 P.3d 143 (2010) ("A jury's finding by special interrogatory is reviewed under the sufficiency of the evidence standard."). Therefore,

---

[1] Hudson also argues that Trooper Blankenship made two other statements that should have been suppressed. Specifically, the fact that (1) once he was in the car, Hudson again told Trooper Blankenship that his back was sore, and (2) Hudson pointed to Charles and told Trooper Blankenship that she was yelling at him because she thought that Hudson was the driver. However, Trooper Blankenship testified to these facts during an offer of proof when the jury was not present and in an effort to investigate Hudson's specific objection. The trial court excluded the statement about Charles yelling, and the jury only heard Trooper Blankenship testify that Hudson said his back was sore *prior to* his arrest. Moreover, Hudson stated that he was "satisfied" that Trooper Blankenship's proposed testimony was consistent with our prior decision. 2 RP at 217. Therefore, Hudson's argument about these statements is baseless.

7

we must determine whether, when reviewing the evidence in a light most favorable to the State, any rational jury could have found the existence of an egregious lack of remorse beyond a reasonable doubt. *State v. Yates*, 161 Wn.2d 714, 752, 168 P.3d 359 (2007). We consider circumstantial and direct evidence equally reliable. *Yates*, 161 Wn.2d at 752. A "mundane lack of remorse found in run-of-the-mill criminals" is not sufficient. *State v. Garibay*, 67 Wn. App. 773, 781, 841 P.2d 49 (1992), *abrogated on other grounds by State v. Moen*, 129 Wn.2d 535, 919 P.2d 69 (1996).

> Here, the jury was instructed that
>
> [a]n egregious lack of remorse means that the defendant's words or conduct demonstrated extreme indifference to harm resulting from the crime. In determining whether the defendant displayed an egregious lack of remorse, you may consider whether the defendant's words or conduct:
> > (a) increased the suffering of others beyond that caused by the crime itself;
> > (b) were of a belittling nature with respect to the harm suffered by the victim or others; or
> > (c) reflected an ongoing indifference to such harm.
> A defendant does not demonstrate an egregious lack of remorse by denying guilt, remaining silent, asserting a defense to the charged crime or failing to accept responsibility for the crime.

Clerk's Papers (CP) at 83-84; *see also* 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 300.26, at 736 (3d ed. 2008).

Grover testified that when he arrived, Butler was hobbling and eventually fell to the ground as Grover looked for the vehicle's other occupants. When Grover discovered Charles, she was not moving, did not appear to be conscious, and was covered in so much blood that he could not see her face. Underwood was gasping as he died in a tree over 30 feet away after being thrown from the car during the accident. However, Grover heard a calm, male voice say that nobody was hurt

8

and Hudson walked away after the accident without calling for help and did not return for about two hours.

Based on the injuries that Grover observed and Hudson's conduct, a rational jury could have found that Hudson was the calm, male voice who told Grover that nobody was hurt because Underwood was badly injured and not in a condition to speak, and Butler was "frantic" and "hollering." 1 RP at 92. A rational jury could also have determined that Hudson displayed an "ongoing indifference" to the harm that he caused because by leaving the accident scene for over two hours when his friends needed medical assistance and by telling Grover that nobody was hurt, he prevented them from getting medical assistance as soon as possible. CP at 84. Therefore, we hold that sufficient evidence supports the jury's special verdict finding that Hudson demonstrated an egregious lack of remorse.

Hudson points to three cases where an egregious lack of remorse was found and argues that the facts here demonstrate that his conduct—saying, "No," to Grover when he asked if anybody was hurt—was not nearly so severe.[2] We disagree with Hudson because (1) he improperly limits the evidence that he acted with an egregious lack of remorse to his one-word response to Grover and (2) these cases are not analogous.

In *Ross*, we held that the defendant's refusal to take responsibility for his actions and the fact that he continued to "blame the justice system for his crimes" showed an egregious lack of remorse. 71 Wn. App. at 563-64.

---

[2] Hudson also points to Division Three of this court's opinion in *State v. Erickson*, 108 Wn. App. 732, 33 P.3d 85 (2001), for additional support. However, the defendant in *Erickson* did not challenge the trial court's determination that he had acted with a "lack of remorse" and Division Three did not review whether the evidence in that case was sufficient to support the special verdict. 108 Wn. App. at 740-42.

In *State v. Wood*, 57 Wn. App. 792, 798, 790 P.2d 220 (1990), we upheld an egregious lack of remorse aggravator applied to a defendant who helped plan her husband's murder. Wood traveled with another man just over one week after the murder and established a residence with a third man just three weeks after the murder. *Wood*, 57 Wn. App at 795. Wood joked about her husband's death and teased the man who pulled the trigger of the gun that killed her husband about his sensitivity to the sound her husband made as he died. *Wood*, 57 Wn. App. at 795.

In *State v. Zigan*, 166 Wn. App. 597, 603, 270 P.3d 625, *review denied*, 174 Wn.2d 1014 (2012), Division Three affirmed the trial court's finding that Zigan displayed an egregious lack of remorse. There, immediately following a fatal accident, Zigan asked the victim's husband if he was "'ready to bleed.'" *Zigan*, 166 Wn. App. at 602. Zigan smiled and laughed while talking with police officers at the scene and joked later with one of the officers that the officer should not ride a motorcycle because "he might get killed by [Zigan] too." *Zigan*, 166 Wn. App. at 603. Zigan also joked with his fellow inmates about the accident. *Zigan*, 166 Wn. App. at 603.

Although the conduct in each of these cases was severe, these cases do not dictate the result here because whether sufficient evidence supports an egregious lack of remorse special verdict is a fact-specific inquiry, *Ross*, 71 Wn. App. at 563, and the facts in this case demonstrate that Hudson displayed an extreme and ongoing indifference to the injuries he caused to his friends. From the facts in this case, a reasonable jury could conclude that Hudson (1) was the driver of the vehicle, (2) calmly told Grover that nobody was hurt immediately after the accident, and (3) walked away from the accident for over two hours without getting help for his friends. When Hudson left the scene, one of his friends was dying after being ejected from the car into a tree and Charles, his

No. 45955-8-II

girlfriend at the time, had blood all over her face. A reasonable jury could find that his continued indifference to their injuries was extreme and ongoing.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

WORSWICK, J.

MELNICK, J.

11