THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79243-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DONALD LEE CALVIN, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

ANDRUS, A.C.J. — Donald Calvin appeals his convictions of assault, kidnapping, unlawful possession of a firearm, and taking a motor vehicle without permission. He argues the trial court erred in denying his motion for substitute counsel on the eve of trial, and in denying his alternative requests for a trial continuance to hire private counsel, or to prepare to represent himself. He also challenges his exceptional sentence based on the jury's finding he acted with deliberate cruelty toward his victim. We affirm his convictions and sentence.

FACTUAL BACKGROUND

On November 30, 2016, Donald Lee Calvin's neighbor, Jason Jones, visited Calvin at his home in Maple Falls, in Whatcom County, Washington. Calvin, suspecting Jones of having previously stolen a briefcase and tools, attacked Jones

with a stun gun, shackled him to a ladder in his living room, and proceeded to beat and torture him for over twelve hours before leaving him to die on a forest road on Sumas Mountain.

On December 6, 2016, the State charged Calvin with one count of first degree assault with a firearm, one count of kidnapping, three counts of second degree unlawful possession of a firearm, and one count of taking a motor vehicle without permission.

Calvin was appointed counsel from the Whatcom County Public Defender's Office. The same attorney represented Calvin throughout 2017 and 2018. At a trial confirmation hearing on October 3, 2018, Calvin's counsel represented to the court that both he and the State were ready to proceed to trial the following week. During this hearing, Calvin informed the court he had filed several pro se motions requesting new counsel or a trial continuance so he could gather funds to hire a private attorney or prepare to represent himself. Calvin claimed his counsel had failed to interview witnesses, had not visited the site, had disregarded "genuine defenses such as pattern and volume of blood spatter," and had refused to listen to Calvin's side of the story. The court scheduled a hearing on these pro se motions for the following day.

During both the October 3 and October 4, 2018, hearings, Calvin's attorney informed the court that the public defender's office could not provide Calvin with a different attorney from the same office unless there was a legal conflict of interest. Although Calvin sought, in the alternative, a continuance to prepare to represent himself, he informed the court "I don't feel I'm competent, confident or competent"

to do so. His attorney indicated that, given Calvin's statement that he was uncomfortable representing himself, "any colloquy by the court as to his Sixth Amendment right to effective assistance of counsel with his own representation has already been essentially defeated by Mr. Calvin by saying that he isn't qualified to do that."

After asking Calvin about the length of time he had been released on bail, his educational level, his experience in legal studies, and his understanding of the rules of procedure and evidence, the court denied Calvin's motions. The court informed Calvin that his trial counsel was "an experienced trial lawyer who is effective in the courtroom," and that it was not appropriate for the court to intervene in the affairs of the public defender's office to order the appointment of one attorney over another. The court suggested that Calvin discuss his concerns with his attorney and supervisors within the public defender's office. Calvin indicated his willingness to do so. The court denied Calvin's motion for a trial continuance and his motion to represent himself because, given the seriousness of the crimes, the court agreed with Calvin that he would be unable to handle his defense without the assistance of counsel.

The parties appeared for trial on October 8. Calvin once again moved to replace his attorney or to continue trial, claiming he was trying to sell his house to pay for a private attorney. Calvin alleged his attorney had violated the rules of professional conduct but refused to identify the violations orally because he wanted to submit a formal written motion at a later date.

After hearing argument, the court denied Calvin's motion for a trial

continuance, finding the request untimely. The court stated that the trial had been delayed for two years, giving Calvin plenty of time to resolve representation issues, and it would not grant a continuance on the first day of trial. The court then engaged in another colloquy with Calvin to determine whether Calvin should be permitted to proceed pro se. Again, Calvin admitted he was not prepared to represent himself and the court denied his motion on that basis.

Calvin's attorney requested that the court address Calvin's accusations that counsel had violated the rules of professional conduct (RPCs). The court agreed to do so and asked Calvin to explain what rules he believed his attorney had violated. Calvin stated his attorney violated the RPCs at the October 4 hearing by telling the court that Calvin was incompetent to represent himself. In response to direct questions from the court, Calvin's attorney stated that "what's most important for me to do is ensure Mr. Calvin has effective assistance of counsel." He informed the court he believed remaining on the case was in Calvin's best interest. The court concluded that trial counsel "has an obligation to tell the court what he or she honestly thinks about representing a client when these issues arise. He is, in fact, bound by the rules of professional conduct to do just that." It found the attorney-client relationship had not broken down to the point that the parties were unable to communicate and refused to delay the trial any further.

On October 15, in the middle of trial, Calvin filed a motion for mistrial, again arguing his trial attorney behaved unethically at the October 4 hearing, and failed to interview witnesses, visit the crime scene, examine exculpatory evidence, or consider possible defenses. A private attorney, David Kennedy, with whom Calvin

had consulted but whom he had not retained, submitted a declaration in support of Calvin's motion, opining that trial counsel had violated RPC 1.16(a)(3) by resisting Calvin's attempts to discharge him. Kennedy also opined that counsel had violated RPC 1.6(a) by disclosing to the court, in the presence of the prosecutor, that counsel had chosen not to interview some of the police officers involved in the investigation because there were inconsistencies in their reports that he did not want to bring to their attention before trial. Kennedy contended the attorney should have asked to make this disclosure ex parte, in camera, and under seal.

The trial court conducted another hearing to address Calvin's motion on October 22. Calvin stated that the attorney-client relationship had broken down completely and he requested a continuance to gather the funds to hire Kennedy. The court again denied the motion, explaining that although Calvin's relationship with his public defender might be strained, it could not find it was broken based on the court's observations of Calvin and his attorney working together during trial. During this hearing, Calvin indicated his intent to file an affidavit of prejudice to force the trial judge to recuse himself. The court denied the request to recuse given that the court had already made discretionary decisions.

The jury found Calvin guilty of all counts, found he was armed with a firearm at the time of the assault and the kidnapping, and found the State had proved the "deliberate cruelty" aggravating factor. The court imposed an exceptional sentence of 480 months.

ANALYSIS

A. Motion to Substitute Counsel

Calvin first argues the trial court erred in declining to substitute counsel, claiming a breakdown in communication with his attorney denied him the constitutional right to counsel. We disagree. The trial court had a reasonable basis for concluding that any conflict between Calvin and his trial attorney was not so adversarial in nature, as to deny Calvin an adequate defense.

This court reviews a trial court's decision denying a motion for substitute counsel for abuse of discretion. State v. Varga, 151 Wn.2d 179, 200, 86 P.3d 139 (2004). The Sixth Amendment of the U.S. Constitution and article I, section 22 of the state constitution ensure a defendant's right to counsel at all stages of a criminal proceeding. U.S. v. Gonzalez-Lopez, 548 U.S. 140, 144, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006). However, the Sixth Amendment does not provide a defendant an absolute right to counsel of his choice. Varga, 151 Wn.2d at 200. "To justify appointment of new counsel, a defendant must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." Id. (quotations omitted).

To determine whether the trial court abused its discretion in refusing to grant a motion for substitution of counsel on the basis of an alleged breakdown in communication, the reviewing court considers the extent of the conflict, the adequacy of the trial court's inquiry into the conflict, and the timeliness of the defendant's motion. In re Pers. Restraint of Stenson, 142 Wn.2d 710, 724, 16 P.3d

1 (2001). A conflict over trial strategy or a defendant's lack of trust or confidence in his attorney does not constitute a conflict of interest or warrant substitution of counsel. State v. Cross, 156 Wn.2d 580, 607, 132 P.3d 80 (2006). "Attorney-client conflicts justify the grant of a substitution motion only when counsel and defendant are so at odds as to prevent presentation of an adequate defense." State v. Stenson, 132 Wn.2d 668, 734, 940 P.2d 1239 (1997).

Calvin argues he was denied an adequate defense because trial counsel refused to communicate with him about issues of trial strategy and failed to interview witnesses and examine evidence Calvin believed would help his case. He contends that this serious breakdown in communication warranted substitution of counsel even if his appointed counsel was competently representing him, citing U.S. v. Nguyen, 262 F.3d 998, 1003 (9th Cir. 2001).

Nguyen is instructive, but does not support Calvin's argument because the facts before us are so different. In that case, the federal district court judge denied the defendant's motion for substitute counsel on the eve of trial after an alleged breakdown in communication between the defendant and his public defender. Id. at 1000-01. The Ninth Circuit held on appeal that the district court had abused its discretion in denying the motion because it failed to balance the defendant's Sixth Amendment rights against any inconvenience and delay from granting the continuance, it failed to question the attorney and defendant "privately and in depth" about their conflict, and there was no question that a complete breakdown in the attorney-client relationship had occurred. Id. at 1004-05.

Nguyen does not require us to reverse Calvin's convictions. First, the Ninth Circuit held the district court abused its discretion in evaluating the timeliness of the request by improperly emphasizing the court's own schedule at the expense of Nguyen's Sixth Amendment rights. Id. at 1003. The same cannot be said here. The trial court concluded Calvin's motions were untimely, not based on an individual judge's schedule, but based on the circumstances of the case as a whole. The judge presiding at the October 4 hearing recognized that a delay would create complications with the availability of many of the State's witnesses. And the judge presiding at trial determined that Calvin had known of the alleged conflict as early as January 2017 and had inexplicably waited two years to raise concerns. The trial court did not abuse its discretion in concluding that Calvin's motion was untimely under these circumstances.

Second, in Nguyen, the district court denied the motion for substitute counsel before hearing from the defendant and made its decision outside the defendant's presence. Id. at 1002. Here, most of the objectionable conduct Calvin identified had either occurred in the trial court's presence or was discussed on the record during the trial court's questioning of Calvin. And the court did not reject Calvin's concerns out of hand but investigated the basis for Calvin's disagreements with trial counsel in a manner far beyond that of the district court in Nguyen.

Calvin had the opportunity to raise his concerns on three separate occasions. At the October 4, 2018, hearing, Calvin offered no evidence other than a lack of confidence in his attorney and a disagreement on trial strategy to justify substitution of counsel. When Calvin renewed his motions on the first day of trial,

the court again conducted a lengthy discussion with Calvin about his request. And on October 22, 2018, in the midst of trial, when Calvin renewed his motions a third time, the court held yet another hearing to determine whether communication between Calvin and his attorney was broken beyond repair. At each hearing, the court went to great lengths to consider and evaluate Calvin's claims, unlike Nguyen.

Lastly, in Nguyen the court concluded that "[t]here is no question in this case that there was a complete breakdown in the attorney-client relationship," based on the fact that the defense attorney acknowledged that his client would no longer speak to him. Id. at 1004. The trial court here heard Calvin's allegations that such a breakdown existed but found Calvin's accusations not credible. The court disagreed with Calvin's characterization of his relationship with his trial attorney, citing its observation of effective communication between Calvin and his attorney as they negotiated a stipulation with the State regarding the admissibility of Calvin's prior felony. The record also indicates that Calvin and his attorney successfully conferred about potential witnesses and jointly decided to call only Calvin to the stand.

In sum, the trial court found Calvin's motions for substitute counsel were untimely and that Calvin had not demonstrated a breakdown in communications between client and attorney warranting this change in counsel at such a late date. These findings are supported by the record. The trial court did not abuse its discretion in declining to grant Calvin's motion for substitution of counsel.

B.      Motion for a Continuance

Calvin next argues the trial court denied him the constitutional right to counsel of his choice when it denied a 90-day continuance to allow him to retain a private defense attorney.  We disagree.

This court reviews the denial of a motion for a continuance for abuse of discretion.  State v. Woods, 143 Wn.2d 561, 604, 23 P.3d 1046 (2001); U.S. v. Garrett, 179 F.3d 1143, 1144-45 (9th Cir.1999).

The Sixth Amendment guarantees the right to be represented by one's preferred attorney.  Wheat v. United States, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988).  However, the right to retain counsel of one's own choice has limits and does not permit a defendant to unduly delay the proceedings.  State v. Aguirre, 168 Wn.2d 350, 365, 229 P.3d 669 (2010).  In considering whether a denial of a continuance might deprive a defendant of his right to counsel, the trial court must weigh the right to choose counsel against the public's interest in the prompt and efficient administration of justice.  Id.

Nothing in the record indicates the trial court abused its discretion in denying Calvin's requested continuance.  The court appropriately weighed Calvin's Sixth Amendment rights against considerations of the victim's interests, availability of witnesses, and trial efficiency.  Both the prosecutor and Calvin's attorney were prepared for trial when Calvin filed his motion.  Calvin brought his motion on the eve of trial, even though he admitted the alleged conflict had existed for nearly two years, and he had no explanation for his failure to seek this relief earlier in the

case.   Under these circumstances, the trial court acted within its discretion in denying the motions for a continuance.

C.      Motion for Self-Representation

Calvin next argues that the trial court erred in denying his motions to represent himself.  We reject this argument because Calvin's request was neither timely nor unequivocal.

This court reviews a trial court's decision to deny a defendant's request to represent himself for abuse of discretion.  State v. Curry, 191 Wn.2d 475, 483, 423 P.3d 179 (2018).  "[E]ven if we disagree with the trial court's ultimate decision, we do not reverse that decision unless it falls outside the range of acceptable choices." Id. at 484.  The trial court is in the best position to evaluate a defendant's request. Id. at 484-85.

The right to self-representation is not absolute.  Id. at 482.  "Trial courts must indulge in every reasonable presumption against a defendant's waiver of his or her right to counsel before granting a defendant's request to waive the right to assistance of counsel and proceed pro se."  Id. at 486 (quotations omitted).  Under this standard, Washington courts engage in a two-step inquiry:

> First, the court must determine whether the request for self-representation is timely and unequivocal.  If the request for self-representation is untimely or equivocal, the defendant's right to counsel remains in place and the trial court must deny the request to proceed pro se.   Second, if the request is timely and unequivocal, the court must then determine whether the request is also voluntary, knowing, and intelligent.

Id. (citations omitted).  The record supports the trial court's finding that Calvin's request was neither timely nor unequivocal.

- 11 -

While Calvin repeatedly requested he be permitted to represent himself, he also repeatedly stated he was incompetent and uncomfortable doing so, and his request was conditioned on a trial continuance. During the October 4, 2018 hearing, Calvin stated,

> I'm financially wiped out, I have my house up for sale and I'm hoping, I've spoken to [a private defense attorney] at length, and if the house should sell then perhaps I can hire outside counsel, but in the interim I'm not comfortable attempting to represent myself. I don't feel I'm competent, confident or competent. I have a high school diploma, something I earned in two-and-a-half years, and that is all.

Calvin contends the court erred in denying his request on October 4, 2018, because it based its decision on whether self-representation was in Calvin's "best interest." We disagree with this characterization of the court's ruling. Given Calvin's admission that he was neither comfortable nor competent to represent himself without a lengthy trial continuance, the court simply agreed with Calvin that he would have inadequate time to get himself up to speed given the seriousness of the charges against him. We conclude the court did not abuse its discretion or apply an incorrect legal standard in ruling on his motion.

When Calvin raised the issue again on October 8, the court extensively questioned Calvin on his ability to represent himself. And again, Calvin said he would not be able to effectively represent himself without a continuance, stating "[i]f I don't have time to study and prepare, assuming that I'm going to have that jury and we are going on to trial today, tomorrow, then I would not be able to represent myself." The court correctly noted that Calvin's request was equivocal at best and nearly two years had passed between when charges were brought and

his first request to proceed pro se. The court did not abuse its discretion in denying any of Calvin's motions to represent himself.

D.      Ineffective Assistance of Counsel

Calvin maintains he received ineffective assistance of counsel because his trial attorney violated ethical standards and failed to properly prepare for trial. The record does not support either argument.

Whether a defendant received ineffective assistance of counsel is a mixed question of fact and law that we review de novo. In re Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001). To demonstrate ineffective assistance of counsel,

> [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See also State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987).

In order to satisfy this test, the defendant must show (1) his counsel's representation fell below a minimum objective standard of reasonableness based on all the circumstances, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. State v. Benn, 120 Wn.2d 631, 663, 845 P.2d 289 (1993). "There is a strong presumption that counsel has rendered adequate assistance and has made all significant decisions in the exercise of reasonable professional judgment." Id. at 665.

Calvin first argues that he received ineffective assistance of counsel because his attorney violated the RPCs during the October 4, 2018 hearing. Although professional standards do not establish minimum Sixth Amendment standards and are not binding, they are often useful to courts in evaluating ineffective assistance of counsel. State v. A.N.J., 168 Wn.2d 91, 110, 225 P.3d 956 (2010). Calvin contends his attorney's conduct fell below professional norms and violated RPC 1.16(a)(1), and (3) when he refused to withdraw after Calvin attempted to discharge him. RPC 1.16(a) states that, "except as stated in paragraph (c), a lawyer shall . . . withdraw from the representation of a client if (1) the representation will result in violation of the Rules of Professional Conduct or other law;" or "(3) the lawyer is discharged."

But under RPC 1.16(c), "[a] lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation." At no point did the trial court grant permission to Calvin's appointed attorney to withdraw. In fact, at multiple points during the proceeding, the trial court ordered counsel to remain as defense counsel.

Calvin next maintains that his attorney violated RPC 1.16(a) by taking a position contrary to his own when he argued against Calvin's pro se motions. But Calvin mischaracterizes his attorney's comments during the October 4, 2018 hearing as "actively opposing" Calvin's motions. Counsel made no comment about Calvin's request for a continuance or to substitute counsel. He did indicate that,

to the extent Calvin sought substitute counsel from the same public defender's office, this request was not an option. But in doing so, counsel did not oppose Calvin's motion; rather, he apprised the court of the realities of the internal procedures of the public defender's office.

Counsel did ask the court not to allow Calvin to represent himself but he did so only after Calvin admitted he was incompetent to do so and uncomfortable being put into the position of representing himself without a trial continuance. Counsel's comments were consistent with Calvin's position at the hearing.

Calvin also claims that counsel violated RPC 1.6(a) during the October 4, 2018 hearing by revealing trial strategy in front of the prosecutor. RPC 1.6(a) provides: "[a] lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b)." RPC 1.6(b)(5) provides an exception to the rule and allows a lawyer to "reveal information relating to the representation of a client to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client."

When Calvin complained his attorney had not interviewed witnesses, the court asked counsel to respond. The attorney stated:

> I have chosen to not interview many of the officers because I do believe the officers, quite frankly, there have been some, I don't know about mistakes, but things overlooked by the officers and I have no intention of bringing those issues before the State and/or the officers in an interview. And that has been my practice for the better part of, well, more than a decade and I have found it to be the most fruitful way to proceed at trial.

These comments do not violate RPC 1.6(a). First, Calvin alleged his attorney was not prepared for trial and had not acted with reasonable diligence in his representation of Calvin. Under these circumstances, RPC 1.6(b)(5) permitted the court to inquire and counsel to defend his performance in the face of these accusations.

Second, the disclosure was entirely too vague to constitute a prejudicial disclosure of trial strategy. Although comment 25 to RPC 1.6 states that a lawyer must make "every effort practicable to avoid unnecessary disclosure of information relating to a representation," the attorney's statement was intentionally vague and revealed no specific inconsistencies in the officers' statements.

Finally, Calvin has once again made no showing that, but for this disclosure, the outcome of the case would have been different. There is nothing in the trial court record to indicate that the police officers' testimony materially differed at trial as a result of any statement counsel made during the October 4 hearing. Calvin has failed to establish ineffective assistance of counsel.

Calvin lastly claims that his attorney failed to properly prepare for trial by declining to interview witnesses and investigate possibly exculpatory evidence. "Ordinarily, the decision whether to call a witness is a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel. The presumption of counsel's competence can be overcome, however, by showing counsel failed to . . . adequately prepare for trial, or subpoena necessary witnesses." State v. Maurice, 79 Wn. App. 544, 552, 903 P.2d 514 (1995). The defendant bears the burden of showing there were no "legitimate strategic or

tactical reasons" behind defense counsel's decisions. State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995).

Calvin presents only cursory or vague accusations that trial counsel did not properly prepare for trial or call the witnesses necessary to ensure an adequate defense. Calvin relies on the fact that he "repeatedly informed the court that [counsel] had not prepared any trial plan or defense strategy and had failed to interview witnesses or investigate possible exculpatory evidence." But Calvin fails to identify any specific witness or exculpatory evidence overlooked by his attorney and certainly fails to show how any decisions regarding who to call at trial lacked legitimate strategic reasoning.

At sentencing, Calvin told the trial court that counsel had refused to call witnesses to testify that his victim, Jones, had previously stolen items from Calvin's home. But the trial court correctly recognized that the decision not to call these witnesses was a legitimate and reasonable strategic decision, because, had he called such witnesses, "he would have been handing the State proof of motive." We have no basis for concluding otherwise here.

The only other witness Calvin appears to have asked his attorney to call was James Wood, a local laborer who had testified for the State regarding his work for Calvin, his contacts with him on the morning after the assault on Jones, and his discovery of a handgun and handcuffs at Calvin's home. After the State rested, Calvin's attorney notified the court that Calvin wanted him to call James Wood back to the stand as a defense witness. Counsel requested a half hour to think through Calvin's request and to figure out what to do. After this recess, counsel

informed the court that "after talking with Mr. Calvin and some other considerations, defense will not be calling any other witness. Mr. Calvin will testify." This series of events demonstrates Calvin's attorney did consider calling Wood back to the stand and discussed the advantages and disadvantages with Calvin before making the final decision. Calvin has not overcome the strong presumption that the decision not to recall Wood was anything other than a legitimate, strategic move.

Finally, Calvin complained at trial that he wanted to retain an expert witness to testify about the blood spatter evidence inside his home. The State presented testimony that Jones's blood was found on a baseball bat, a metal pipe, the living room carpet, a rope, a dark colored sweatshirt, and a ladder all found inside Calvin's house. The blood evidence matched Jones's testimony regarding the various items Calvin had used to beat him, where the beating occurred, and how Calvin had shackled him to a ladder to keep him from fleeing the assault.

During trial, Calvin argued that blood spatter analysis would refute police testimony about the blood found at Calvin's house. The court pointed out that the overall value of expert witness testimony on blood spatter appeared to be very low, almost to the point of being irrelevant and it could see why Calvin's attorney might have decided not to call such a witness for strategic reasons.

The record supports the trial court's conclusion. The State did not rely on any expert testimony regarding blood spatter to infer what happened inside Calvin's house on the day of the assault. The mere presence of Jones's blood inside Calvin's home, on weapons Calvin admitted using to attack Jones, and on

shackles and a ladder found on Calvin's property supported Jones's version of events and the State's theory of the case. At trial, Calvin admitted he assaulted Jones. His defense was that he attacked Jones in self-defense. Like the trial court, we cannot see how a blood spatter expert would have advanced Calvin's defense or undercut the State's evidence.

Calvin fails to establish ineffective assistance of counsel.

E.    Affidavit of Prejudice

Calvin argues that the trial court erred in refusing to allow him to file an affidavit of prejudice against Judge Olson. This claim also lacks merit. A party to any action in superior court may disqualify no more than one judge from hearing a matter so long as the disqualification is filed and called to the attention of the judge before the judge has made a discretionary ruling in a case. RCW 4.12.050. By the time Calvin indicated an intent to file an affidavit of prejudice against the trial judge on October 22, 2018, the court had made numerous discretionary rulings. Calvin's motion was therefore untimely and the trial court did not err in refusing to disqualify itself from presiding to the conclusion of trial.

F.    Evidence of Deliberate Cruelty

Calvin next argues that the State did not prove that his conduct manifested the aggravating factor of deliberate cruelty toward his victim. We disagree.

When sufficiency of the aggravating factor is challenged, the court reviews the evidence in the light most favorable to the State to determine "whether any rational trier of fact could have found the presence of the aggravating

circumstances beyond a reasonable doubt." State v. Zigan, 166 Wn. App. 597, 601-02, 270 P.3d 625 (2012).

The legislature allows a court to impose a sentence outside the standard range for an offense if "[t]he defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victim." RCW 9.94A.535(3)(a). The jury returned a special verdict finding that Calvin had acted with deliberate cruelty in the commission of assault and kidnapping.

Calvin argues the definition of deliberate cruelty requires the jury to make a factual comparison between a "typical" assault and kidnapping case and those same crimes carried out with deliberate cruelty. Without evidence of what constitutes a "typical" assault, he argues, the State did not meet its evidentiary burden. Calvin's argument is without merit.

First, the jury instructions adequately informed the jury how to decide if Calvin's actions constituted deliberate cruelty. The instructions laid out the elements of first degree assault and first degree kidnapping. Assault in the first degree requires a showing of a single assault, committed with the intent to inflict great bodily harm, or an assault committed with a deadly weapon, or with force likely to produce great bodily harm. Kidnapping in the first degree requires a showing of an abduction with the intent to inflict bodily injury or extreme mental distress. The instructions defined deliberate cruelty as "gratuitous violence or other conduct which inflicts physical, psychological, or emotional pain as an end in itself, and which goes beyond what is inherent in the elements of the crime." These instructions alone permitted the jury to compare conduct "inherent in the elements

of the crime" against conduct that is "gratuitous violence" that goes beyond what is inherent in the elements of assault and kidnapping.

The evidence at trial established Calvin repeatedly struck Jones with a baseball bat and a metal pipe, used a Taser on him, injected him with unknown substances, and forced him to drink something Jones believed to have been spiked with drugs. Calvin held Jones captive for hours by shackling him by his wrist and ankles to a ladder. At one point, he pointed a rifle at Jones's head and pulled the trigger. Calvin ultimately carried Jones to the car in which he arrived, drove the car up a logging road, and after Jones leapt from the moving car, left him there without calling for medical aid. Jones sustained a fractured skull and cheek bone, open fractures to multiple bones in both hands, traumatic damage to his muscles in his hands and fingers, and damage to his kidneys. Calvin beat Jones to within an inch of his life, exceeding what any reasonable juror would conclude was inherent in the elements of the two charged crimes. The jury had sufficient information to find Calvin acted with deliberate cruelty.

Second, Calvin's legal argument that the State needs to provide evidence of what constitutes a "typical" assault is based on a footnote in State v. Suleiman, 158 Wn.2d 280, 294 n.5, 143 P.3d 795 (2006). His reliance on Suleiman is misplaced. In that case, after the defendant pleaded guilty to vehicular assault, the trial court imposed an exceptional sentence finding the crime to be far more egregious than the typical vehicular assault and his victim to be particularly vulnerable. Id. at 287. The Supreme Court reversed the sentence, concluding Suleiman had not stipulated to the facts on which the trial court relied for the

exceptional sentence. Id. at 293-294. In a footnote, the court stated that the trial court's finding that the crime was more egregious than the typical vehicular assault necessarily involved a factual comparison that must be done by a jury, rather than by a trial court. Suleiman, 158 Wn.2d at 294 n. 5.

But the court in Suleiman did not hold, as Calvin suggests, that the State needs to produce factual evidence of what constitutes the "typical" assault or kidnapping. The court merely held that when an exceptional sentence is based on facts not otherwise stipulated to by a defendant, it is the jury, and not the trial court, who must make the factual determinations. Id. at 293-94. This requirement was clearly satisfied here.

We therefore conclude that the jury's finding of deliberate cruelty was supported by sufficient evidence.

G.     Vagueness Doctrine

Calvin next argues that the deliberate cruelty aggravating factor violates his due process rights under the void for vagueness doctrine. Because the vagueness doctrine does not apply to aggravating factors, we reject this argument.

The due process clause of the U.S. Constitution prohibits the government from enforcing criminal laws that are so vague that they fail to give ordinary people fair notice of the conduct the laws punish. Beckles v. U.S., __ U.S. __ 137 S. Ct. 886, 892, 197 L. Ed. 2d 145 (2017). This void-for-vagueness doctrine applies to both "laws that define criminal offenses and laws that fix the permissible sentences for criminal offenses." Id. Sentencing statutes must specify the range of available sentences with clarity. Id. But sentencing guidelines that "merely guide the

exercise of a court's discretion in choosing an appropriate sentence within the statutory range" are not subject to a vagueness challenge. Id.

In Beckles, the Supreme Court held that the advisory federal sentencing guideline that gives a district court the discretion to enhance a sentence upon a finding that a defendant had two or more prior convictions for "crimes of violence," is not subject to a vagueness challenge under the due process clause of the Fifth Amendment. Id. at 890-91.

Beckles is consistent with our Supreme Court's holding in State v. Baldwin, 150 Wn.2d 448, 459, 78 P.3d 1005 (2003), in which the court held that the void-for-vagueness doctrine does not apply to aggravating factors that allow a sentencing court to impose an exceptional sentence. The defendant in Baldwin challenged the sentencing guidelines found in RCW 9.94A.535(3)(d) (major economic offense) (then codified as RCW 9.94A.390)(2)(d)), arguing that the statute "did not provide explicit standards to protect against arbitrary application" because it did not provide a "framework to determine when an identity theft involves a degree of sophistication that is 'greater than typical of theft of identity' or when there is an attempted monetary loss substantially 'greater than typical for theft of identity.'" Id. at 457.

Our Supreme Court rejected this void-for-vagueness challenge:

> Sentencing guidelines do not inform the public of the penalties attached to a criminal conduct nor do they vary the statutory maximum and minimum penalties assigned to illegal conduct by the legislature. A citizen reading the guideline statutes will not be forced to guess at the potential consequences that might befall one who engages in prohibited conduct because the guidelines do not set penalties. Thus, the due process considerations that underlie the

void-for-vagueness doctrine have no application in the context of sentencing guidelines.

Id. at 459 (citations omitted).

Calvin argues that Baldwin preceded Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and is no longer good law. Blakely did not involve a void-for-vagueness challenge. In that case, a defendant pleaded guilty to second degree kidnapping and the State recommended a sentence within the standard range of 49 to 53 months. Id. at 299-300. The sentencing court imposed an exceptional sentence of 90 months, finding the defendant had acted with deliberate cruelty under former RCW 9.94A.390. Id. The defendant argued the sentence violated his constitutional right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence. Id. at 301. The Supreme Court agreed and held that under Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Supreme Court did not hold that the void-for-vagueness doctrine applies to statutory aggravating factors found by a jury to exist.

Calvin argues that under Blakely, statutory aggravating factors are now elements of the crime making them subject to the void-for-vagueness doctrine. Calvin's analytical leap is not only unsupported by Blakely but is also inconsistent with the recent decision in Beckles.

We conclude Baldwin is dispositive here and we reject Calvin's void-for-vagueness challenge to the "deliberate cruelty" aggravating factor of RCW 9.94A.535(3)(a).

H.    Statement of Additional Grounds

Calvin raises a number of other issues in his statement of additional grounds, none of which have merit.  He first argues the prosecutor committed misconduct when he blamed Calvin for the delay in the commencement of trial.  To prove prosecutorial misconduct, Calvin must establish that the prosecutor's conduct was improper and prejudicial in the context of the entire case and that there is a substantial likelihood that the instances of misconduct affected the jury's verdict.  State v. Thorgerson, 172 Wn.2d 438, 442-43, 258 P.3d 43.  Calvin has not met this standard here.

The prosecutor did not blame Calvin for the delay in the trial.  And the cause of the two-year delay was immaterial to the trial court's decision to deny Calvin's motions as untimely.  What was relevant was the fact that Calvin had had ample time to retain private counsel, or to prepare to represent himself, had he decided a change in counsel was in his best interest.

Calvin next argues the trial court violated his constitutional right to a speedy trial.  To show a violation of constitutional speedy trial rights, Calvin must establish actual prejudice to his ability to prepare a defense unless the delay "is so lengthy that prejudice to the ability to defend must be conclusively presumed."  State v. Ollivier, 178 Wn.2d 813, 826, 312 P.3d 1 (2013).  To trigger a speedy-trial analysis, a defendant must allege that the interval between charge and trial has crossed the

threshold dividing ordinary from "presumptively prejudicial delay." Id. at 827. Where the delay is sufficiently long to trigger the presumption of prejudice, the analysis of speedy trial violations is fact-specific and dependent upon the peculiar circumstances of the case. State v. Iniguez, 167 Wn.2d 273, 292, 217 P.3d 768 (2009). Among the nonexclusive factors to be considered are the length of delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and the prejudice to the defendant. Ollivier, 178 Wn.2d at 827. While the 22-month delay between the date of Calvin's charge and his trial is sufficient to trigger a more in-depth analysis, none of the factors leads us to conclude that a speedy trial violation occurred in this case.

First, the length of delay was proportionate to the seriousness and complexity of the case. Second, there is no evidence indicating that the delay was purposed to frustrate Calvin's defense. The primary concern with each continuance was readiness of both parties and the availability of witnesses. At least one continuance can be entirely attributed to the defense. Calvin objected to the continuances twice, but in each case, the court's decision to continue trial was partially due to the fact that defense counsel was unprepared. These continuances at least partially furthered Calvin's interests in the preparedness of his own counsel. We can identify no prejudice Calvin suffered by any of the continuances, particularly given Calvin's trial request for additional time to sell his home to retain private counsel.

Calvin lastly argues that the trial court erred in denying his motion for reconsideration of an October 24, 2018 decision to deny Calvin's request to be

released on bond following his conviction.  Calvin argues that the trial court erred in finding his motion untimely.  But neither Calvin's motion nor any post-judgment order can be found in the record before this court.  We therefore decline to address this argument.  See State v. Stockton, 97 Wn.2d 528, 530, 647 P.2d 21 (1982) (matters referred to in brief but not included in record cannot be considered on appeal).

We affirm Calvin's convictions and sentence.

Andrus, A.C.J.

WE CONCUR:

Appelwick, J.