[No. 41103-2-II.   Division Two.   February 20, 2013.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSE MIGUEL GASTEAZORO-PANIAGUA, *Appellant*.

752

*Jeffrey E. Ellis* (of *Oregon Capital Resource Center*) and *B. Renee Alsept*, for appellant.

*Anthony F. Golik, Prosecuting Attorney*, and *Abigail E. Bartlett, Deputy*, for respondent.

¶1  QUINN-BRINTNALL, J. — A jury found Jose Gasteazoro-Paniagua guilty of atempted first degree murder with a firearm enhancement and first degree unlawful possession of a firearm. Gasteazoro-Paniagua appeals, alleging that (1) his statements were improperly admitted because they were made after he requested counsel; (2) the trial court violated his right to be present at trial; (3) the trial court erred by refusing to give a novel jury instruction regarding the alleged jailhouse informant's testimony; (4) the trial court erred by allowing the State to introduce extrinsic evidence of the victim's prior inconsistent statements; (5) the trial court erred by denying his motion for a mistrial; (6) the trial court erred by admitting officer testimony about hearsay statements witnesses made to the police; (7) the

State committed misconduct during closing arguments; and (8) the jury instructions regarding the firearm enhancement violated the unanimity requirement in *State v. Bashaw*, 169 Wn.2d 133, 234 P.3d 195 (2010), *overruled by State v. Guzman Nuñez*, 174 Wn.2d 707, 285 P.3d 21 (2012), and *State v. Goldberg*, 149 Wn.2d 888, 72 P.3d 1083 (2003), *overruled by Nuñez*, 174 Wn.2d 707. Discerning no reversible error, we affirm.

¶2 In the published portion of this opinion we address Gasteazoro-Paniagua's challenge to the admission of statements he made during the police interview. The remaining issues are fact specific and are addressed in the unpublished portion of our opinion.

## FACTS

¶3 On December 30, 2009, at approximately 10:30 PM, a man dressed in a dark-colored hooded sweatshirt entered the Buy Low Market in Clark County, Washington, and shot Jose Muro five times. Muro was stocking Buy Low's walk-in refrigerator when he was shot. He survived. The police did not recover the gun.

¶4 Muro and Gasteazoro-Paniagua were best friends but had a falling out when Gasteazoro-Paniagua had an affair with Muro's brother's wife, Nicole Sanchez. Muro called Gasteazoro-Paniagua about an hour before he was shot in response to a text message from Gasteazoro-Paniagua. Although they were no longer friends, Gasteazoro-Paniagua asked Muro if he wanted to meet for a drink; Muro declined, telling Gasteazoro-Paniagua that he was at work.

¶5 On January 7, Yakima Police Department officers arrested Gasteazoro-Paniagua in Yakima. Detectives Rick Buckner and Lindsay Schultz of the Clark County Sheriff's Department interviewed Gasteazoro-Paniagua just after midnight at the Yakima Police Department. At Gasteazoro-Paniagua's arraignment on June 10, the State filed a second amended information charging Gasteazoro-Paniagua with

attempted first degree murder with a firearm enhancement and a first degree unlawful possession of a firearm charge. RCW 9.41.040(1)(a); RCW 9.94A.533(3), .825. Gasteazoro-Paniagua pleaded not guilty to all charges.

¶6 Gasteazoro-Paniagua moved to suppress statements he made to police during the interview with the detectives in Yakima. Following a CrR 3.5 hearing, the trial court found that Gasteazoro-Paniagua had waived his rights to counsel and to silence and concluded that his statements were voluntary and admissible. A jury trial began on June 14, 2010. Gasteazoro-Paniagua stipulated to a previous conviction for a serious offense. On June 17, Gasteazoro-Paniagua moved for mistrial, arguing that one of the investigating officers identified him in the store surveillance video in violation of the court's ruling in limine to exclude police opinion testimony as to his guilt. The trial court denied the motion.

¶7 On June 23, Gasteazoro-Paniagua moved to exclude the testimony of T.J., an alleged jailhouse informant.[1] The trial court denied the motion. Based on his characterization of T.J. as a jailhouse informant, Gasteazoro-Paniagua proposed a jury instruction that specifically instructed the jury to treat T.J.'s testimony with caution. The trial court declined to give Gasteazoro-Paniagua's proposed instruction. On June 29, a jury found Gasteazoro-Paniagua guilty as charged. On July 8, Gasteazoro-Paniagua filed a CrR 7.6 motion for new trial, asserting that the trial court erred by denying his motion for mistrial and alleging several instances of prosecutorial misconduct. The trial court denied the motion and sentenced Gasteazoro-Paniagua to 429.75 months confinement for the attempted first degree murder conviction and 89 months for the first degree unlawful possession of a firearm conviction, to be served concurrently.

¶8 Gasteazoro-Paniagua timely appeals.

---

[1] We refer to the witness by his initials to protect his privacy.

## ANALYSIS

REQUEST FOR AN ATTORNEY DURING POLICE INTERVIEW

¶9 Gasteazoro-Paniagua alleges that the trial court erred by denying his CrR 3.5 motion to suppress the statements that he made to the police during the interview in Yakima.[2] Gasteazoro-Paniagua argues that during the interview, he made an unequivocal request for counsel and the detectives were required to immediately stop questioning him. Because the officers continued to question him, Gasteazoro-Paniagua contends that his Fifth Amendment rights were violated and the statements were inadmissible. But Gasteazoro-Paniagua's statement was not an unequivocal request for counsel and, as a result, the trial court did not err by denying Gasteazoro-Paniagua's CrR 3.5 motion to suppress the statements he made to the police.

¶10 We review the trial court's findings of fact from a CrR 3.5 hearing to determine if they are supported by substantial evidence. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). We review de novo whether the trial court's conclusions of law are properly derived from its findings of fact. *State v. Pierce*, 169 Wn. App. 533, 544, 280 P.3d 1158 (citing *State v. Grogan*, 147 Wn. App. 511, 516, 195 P.3d 1017 (2008), *adhered to on remand*, 158 Wn.App 272, 246 P.3d 196 (2010)), *review denied*, 175 Wn.2d 1025 (2012). Unchallenged findings of fact are verities on appeal. *Pierce*, 169 Wn. App. at 544 (citing *State v. Lorenz*, 152 Wn.2d 22, 30, 93 P.3d 133 (2004)). After making a knowing, voluntary, and intelligent waiver of *Miranda*[3] rights, a defendant must unequivocally request an attorney in order to invoke his right to counsel.

---

[2] After oral argument we ordered the State to supplement the record with the full transcript of the police interview with Gasteazoro-Paniagua. RAP 9.11. After review of the transcript, we have determined that the full transcript is not materially different from the evidence admitted at trial. Therefore, we limit our review to the trial record originally designated for review.

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

*State v. Radcliffe*, 164 Wn.2d 900, 906-07, 194 P.3d 250 (2008); *see also State v. Nysta*, 168 Wn. App. 30, 40-41, 275 P.3d 1162 (2012); *Pierce*, 169 Wn. App. at 544. To be unequivocal, the defendant " 'must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.' " *Nysta*, 168 Wn. App. at 41 (quoting *Davis v. United States*, 512 U.S. 452, 459, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994)).

▋ ¶11 It is undisputed that Gasteazoro-Paniagua made a knowing, voluntary, and intelligent waiver of his rights at the beginning of the interview. But Gasteazoro-Paniagua argues that during the interview, he made an unequivocal request for counsel, which required the detectives to immediately stop all questioning until an attorney was provided. During the interview, Buckner stated, "[W]e don't end up here with you in custody unless we've got a probable cause." 8 Report of Proceedings (RP) at 88. Gasteazoro-Paniagua responded, "I mean I guess I'll just have to talk to a lawyer about it and, you know, I'll mention that you guys are down here with a story." 8 RP at 88-89.

¶12 Our Supreme Court has held that the statement " '[m]aybe [I] should contact an attorney' " is clearly an equivocal statement, not an unequivocal request. *Radcliffe*, 164 Wn.2d at 907-08 (alterations in original) (citing *Davis*, 512 U.S. at 455). In contrast, statements such as "I gotta talk to my lawyer" and "I'm gonna need a lawyer because it wasn't me" are unequivocal requests for an attorney. *Nysta*, 168 Wn. App. at 42; *Pierce*, 169 Wn. App. at 544-45.

¶13 Unlike the statements in *Nysta* and *Pierce*, Gasteazoro-Paniagua's statement was not in the present tense and did not refer to his lawyer or any lawyer in particular. Furthermore, "guess" indicates doubt. Webster's Third New International Dictionary 1008 (2002) ("guess" means to form a judgment without knowledge, conjecture, estimate, surmise). An indication of doubt cannot be considered an unequivocal request. *Id.* at 2494 ("unequivocal" means leaving

no doubt, expressing only one meaning; expressing finality); *see also Taylor v. Indiana*, 689 N.E.2d 699, 703 (Ind. 1997).

¶14 Other jurisdictions have determined that using the phrase "I guess" is equivocal and does not invoke a defendant's right to counsel. *United States v. Clark*, 746 F. Supp. 2d 176, 185 (D. Me. 2010) (holding that because the statement "I guess" conveyed uncertainty, the defendant did not unambiguously invoke his right to counsel); *Taylor*, 689 N.E.2d at 703 (defendant's statement, " 'I guess I really want a lawyer, but, I mean, I've never done this before so I don't know' " was "an expression of doubt, not a request"). "I guess" is also considered to be equivocal in other circumstances. *See, e.g., California v. Valdez*, 55 Cal. 4th 82, 136, 281 P.3d 924, 144 Cal. Rptr. 3d 865 (2012) ("Witness No. 13 answered the prosecution's questions, not with a simple 'yes' or a 'no,' but with a decidedly equivocal, 'I believe so' or 'I guess.' "); *McDaniel v. Kentucky*, 341 S.W.3d 89, 98 (Ky. 2011) (Cunningham, J., dissenting) ("The majority is correct that S.W. gave equivocal answers such as, 'I guess,' and 'It's hard to say.' "); *United States v. Nelson*, 450 F.3d 1201, 1212 (10th Cir.) ("From an objective standpoint, *'I guess I'm ready to go to jail then'* is at best an ambiguous or equivocal statement that *might* be construed as an indication of a desire to discontinue a police interview."), *cert. denied*, 549 U.S. 937 (2006); *Smith v. Texas*, 907 S.W.2d 522, 530 (Tex. Crim. App. 1995) ("[T]he veniremember never gave an answer less equivocal than 'I think . . .' or 'I guess.' " (second alteration in original)).

¶15 Gasteazoro-Paniagua has not cited any persuasive legal authority supporting his position that his statement

> I mean, I guess I'll just have to talk to a lawyer about it, and you know I'll mention you guys are down here with a story and —

was unequivocal. 8 RP at 89; *see* Br. of Appellant at 22 (citing *Abela v. Martin*, 380 F.3d 915, 926 (6th Cir. 2004);

*United States v. Perkins*, 608 F.2d 1064, 1066 (5th. Cir. 1979)). In *Abela*, the defendant stated, " '[M]aybe I should talk to an attorney by the name of William Evans.' " 380 F.3d at 926. The court rejected the contention that the use of "maybe" was dispositive because Abela mentioned a specific attorney by name and handed the officer the attorney's business card. *Abela*, 380 F.3d at 926. A reasonable officer, in the circumstances, would have interpreted Abela's statement, combined with his actions, as a request to speak to an attorney. *Abela*, 380 F.3d at 926. Here, Gasteazoro-Paniagua did not mention an attorney by name. He also took no action such as providing an attorney's contact information to the detectives that would lead a reasonable officer to believe that he was requesting an attorney.

¶16 In *Perkins*, the defendant stated, " 'I think I want to talk to a lawyer.' " 608 F.2d at 1066. But the parties did not dispute whether this was an unequivocal request for counsel. *Perkins*, 608 F.2d at 1067. The court did not give any indication whether the statement would have actually been determined to be unequivocal if the nature of the statement had been in question. *See Perkins*, 608 F.2d at 1067. Therefore, *Perkins* is not persuasive for determining the nature of Gasteazoro-Paniagua's statement.

¶17 Furthermore, Gasteazoro-Paniagua's assertion that "[i]t is clear that Gasteazoro-Paniagua's statement was deferential to the authority of the police" lacks merit. Br. of Appellant at 22-23. Gasteazoro-Paniagua's assertion has no factual basis in the record. Based on the content of the interview and the detectives' testimony about Gasteazoro-Paniagua's demeanor during the interview, it does not appear that Gasteazoro-Paniagua exhibited any deference to police authority. Throughout the interview Gasteazoro-Paniagua was evasive and unresponsive. The detectives who interviewed Gasteazoro-Paniagua described him as arrogant and cocky. On these facts, it is improbable that his statement was made out of deference to police authority. In

addition, Gasteazoro-Paniagua does not cite to any legal authority that supports the argument that an otherwise equivocal request should be considered unequivocal if there is an indication that the defendant was being deferential to general police authority.[4]

¶18 Considering Gasteazoro-Paniagua's attitude during the interview and his general refusal to cooperate by being unresponsive, a reasonable officer would conclude that if Gasteazoro-Paniagua wanted to speak to an attorney, he would tell them outright he would not answer any more questions without an attorney. Furthermore, neither officer testified that they perceived Gasteazoro-Paniagua's statement to be a request for counsel; in fact, the officers specifically explained why they did not perceive Gasteazoro-Paniagua's statement to be a request for counsel. Therefore, substantial evidence supports the trial court's finding that Gasteazoro-Paniagua's statement was not an unequivocal request for an attorney. Because Gasteazoro-

---

[4] Obviously, this reasoning would not apply if the police tactics used in the interview were coercive. Statements are inadmissible if the police tactics prevent a defendant from making a rational, independent decision about giving a statement. *State v. Unga*, 165 Wn.2d 95, 102, 196 P.3d 645 (2008). During the interview, almost immediately after Gasteazoro-Paniagua made his comment about a lawyer, Detective Schultz made the following statement:

Understand (indiscernible) when we leave here, understand this really clearly, when we leave and go back, we're done with the conversations with you. Okay, there's not going to be a second chance to say, Okay. Let me explain something, let me get something out, let me tell you my side, so on and so on.

8 RP at 102.

Under some circumstances, the threat that the suspect would not get another chance to tell his side of the story may be coercive and result in the suspect making an irrational judgment about whether to make statements to the police or whether to assert his right to an attorney. But the facts of this case do not support a conclusion that the detectives' statements had a coercive effect on Gasteazoro-Paniagua.

Throughout the interrogation, Gasteazoro-Paniagua continued to deny any involvement in or knowledge about the shooting. Furthermore, at trial, Gasteazoro-Paniagua testified, "I wasn't trying to really cooperate with the police," and, "I didn't make nothin' up, I just didn't really, you know, yeah, I didn't tell them the truth." 17-A RP at 1863-64. Because the detectives' statements had no effect on Gasteazoro-Paniagua's decision to make statements to them, and Gasteazoro-Paniagua did not make any incriminating statements, the detectives' statements were not coercive in this case.

Paniagua's statement regarding a lawyer was not an unequivocal request for an attorney, the trial court did not err by admitting the statement. *Radcliffe*, 164 Wn.2d at 908.

¶19 Although we hold that Gasteazoro-Paniagua's statement was not an unequivocal request for counsel, we take the opportunity to emphasize that "when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney." *Davis*, 512 U.S. at 461.

¶20 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, A.C.J., and VAN DEREN, J., concur.

Reconsideration denied May 2, 2013.

Review denied at 178 Wn.2d 1019 (2013).