

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37480-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| IRA LEO FRANK, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Ira Frank appeals his convictions for second degree burglary and

second degree malicious mischief, contending the trial court erred by admitting, over his

objection, statements he made to two Omak police officers. One of their fellow officers

had interviewed Mr. Frank first, read Mr. Frank his *Miranda*[1] warnings off of a card, and

obtained his agreement to speak. The second and third officers, who questioned him

sequentially after the first officer, did not repeat the *Miranda* warnings.

The State presented evidence that Mr. Frank was read his rights and knowingly,

intelligently and voluntarily waived them. Given the sequential nature of the interviews,

repeated *Miranda* warnings were not required. While it was error for the trial court to

fail to enter written findings and conclusions required by CrR 3.5, the error was harmless,

given the sufficiency of the record for appellate review. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Early in the morning on December 26, 2019, Officers Vern Reyes and Shane

Schaefer were investigating the report of a burglary of a building on Main Street in

Omak, when they noticed signs that a second building, at 115 South Main, had also been

burglarized. A commercial tenant of the building, Intrigue Communications, was

contacted and had an employee travel to the building that day so that officers could

review its surveillance video.

The surveillance video was described by Officer Reyes in a declaration of

probable cause as showing an "unknown male subject and a black, brown and white dog

walk through the building." Clerk's Papers (CP) at 9. The unknown male wore a white

letterman jacket with black sleeves. The jacket had a big letter B on the left front chest

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

and a big number 68 on the left arm. The man also wore dark colored pants, black and white shoes, a baseball cap, and a bandana over the left half of his face. The video showed the man walking to every door attempting to find any that were unlocked. When he found none that were unlocked, he "busted through" a number of doors, walked around the rooms, and then walked out. CP at 9.

Officer Schaefer recognized the dog as belonging to Veronica Norrell and Ira Frank. Later that evening, Officers Schaefer and Reyes contacted Ms. Norrell, who told them she had not recently seen Mr. Frank, but was looking for him because her dog, Panda, had been in his possession since December 24.

Following further investigation, including interviews of Mr. Frank that are described below, Mr. Frank was charged with second degree burglary and second degree malicious mischief.

*CrR 3.5 hearing*

At a readiness hearing in early February 2020, the trial court conducted a CrR 3.5 hearing to determine the admissibility of statements Mr. Frank made to police.

Detective Brian Bowling[2] testified at the hearing that after becoming aware that Officers Schaefer and Reyes were looking for Mr. Frank, he saw Mr. Frank walking down Columbia Street. He stopped Mr. Frank, told him he needed to talk to him "about

---

[2] The report of proceedings spells the last name "Boling." We rely on clerk papers that suggest the last name is spelled "Bowling."

some burglaries that happened," and took him to the police department. Report of

Proceedings (RP) at 19. Mr. Frank was not under arrest.

When they arrived at the police department, Detective Bowling read Mr. Frank his

*Miranda* rights. They included that Mr. Frank could "decide at any time to exercise these

rights and not answer any questions or make any statements." RP at 19. Mr. Frank told

Detective Bowling he understood and wished to speak with him. According to Detective

Bowling, he primarily questioned Mr. Frank about a separate burglary, but talked about

the 115 South Main burglary at issue "a little bit," joking about taking a dog to a

burglary. RP at 20-22.

Officer Schaefer testified that around 6:00 p.m. that same day, he arrived at work

and was informed by Detective Bowling that Mr. Frank was at the police department.

The 115 South Main burglary was Officer Reyes's case, not Officer Schaefer's, but since

he was familiar with the clothing aspect, he decided to follow up on that while waiting

for Officer Reyes to arrive at work. Officer Schaefer asked Detective Bowling if he read

Mr. Frank his *Miranda* rights, and was told he had.

Officer Schaefer proceeded to question Mr. Frank about the clothing he had been

wearing the last few days. Mr. Frank told Officer Schaefer he had been wearing a white

jacket with black leather sleeves that had a letter on the front and writing or a design on

the back. At no time during the conversation did Mr. Frank request an attorney or say he

no longer wanted to answer questions. When Officer Schaefer asked where he could find

4

the clothes Mr. Frank had described, Mr. Frank said he had thrown them into a dumpster behind Valley Lanes a couple of nights before. Asked why, Mr. Frank said he did not know. Officer Schaefer took Mr. Frank with him to the dumpster to look for the clothing, but it was not found. Officer Schaefer testified he did not know the amount of time between Detective Bowling's reading of Mr. Frank's *Miranda* rights and his own questioning.

Officer Reyes testified that he arrived at work around 8:00 p.m., and was informed by Officer Schaefer that Mr. Frank was in the police department. He testified that this was on December 27. Officer Reyes verified Mr. Frank had been Mirandized. Officer Reyes watched the surveillance video with Mr. Frank and showed Mr. Frank photographs taken from the burglary. Mr. Frank told Officer Reyes he did not remember what happened on Christmas night. He did identify the dog in the burglary surveillance as Panda, and confirmed that Panda had been in his possession since December 24. He told Officer Reyes that he did not steal anything and whoever broke into the building was his "doppelganger." RP at 30. At no point during the conversation did Mr. Frank request an attorney or say he no longer wanted to answer questions.

At the conclusion of the officers' testimony, defense counsel argued that statements made to Detective Bowling could be admitted but the statements made to Officers Schaefer and Reyes should not be. He argued that when Detective Bowling Mirandized Mr. Frank, he was not talking about the 115 South Main burglary; at most,

5

they talked about the dog.  At no point did Officer Schaefer or Officer Reyes Mirandize

Mr. Frank, and there was no indication of how long Mr. Frank sat at the police station in

between questioning.  The only time line given was that two hours passed between

Officer Schaefer's and Officer Reyes's questioning.

In the trial court's oral ruling, it observed that none of the facts appeared to be

disputed.  It summarized that Detective Bowling

> knew that officers, in this case it turns out to be Officers Reyes and
> Schaefer were looking for Ira Frank.  Indicated he was not under arrest, that
> he, and my notes indicated that Detective Boling used the phrase he needed
> to talk to him about burglaries, plural, not singular.  I wasn't talking about
> one—my notes indicated he said burglaries.  I wrote that specifically.  That
> Mr. Frank was advised of his *Miranda* rights, read that rights to him.  [sic]
> That Mr. Frank acknowledged he understood those rights.  During any
> questioning in this matter he never asked for an attorney.  There's no
> testimony at any time that he was threatened.  There was no testimony that
> he was coerced.

RP at 32-33.

The trial court observed that Mr. Frank answered questions "from the Court's

perspective freely and voluntarily and in fact there was no evidence that even the

timeframe that went by resulted in any form of coercion or threats towards Mr. Frank."

RP at 33.  It also observed that Mr. Frank had not offered "any evidence whatsoever that

the time period here affected him in any way or manner." *Id.*

The trial court concluded its oral ruling by observing that "[a]t no time was [Mr.

Frank] threatened or any promises made to him by the officers in their questioning.

6

Never asked for an attorney. All three officers indicated that in their statements.

Therefore, the Court finds that the statements made were given freely and voluntarily, not

under any form of duress and after he'd been Mirandized, as such. Court will allow the

statements." RP at 34.

The court asked the deputy prosecutor to prepare findings and conclusions based

on the CrR 3.5 hearing. Evidently it was not done.

A jury found Mr. Frank guilty as charged. He appeals.

ANALYSIS

Mr. Frank assigns error to the trial court's admission of his statements to officers

Schaefer and Reyes and the failure to enter findings and conclusions following the CrR

3.5 hearing.

*Standard of review*

Both the United States Constitution and the Washington Constitution grant a

defendant the right against self-incrimination. *See State v. Easter*, 130 Wn.2d 228, 235,

922 P.2d 1285 (1996). Under *Miranda*, 384 U.S. 436, the State may not admit as trial

evidence any statements a suspect makes during a custodial interrogation unless it proves,

by a preponderance of the evidence, the defendant received fully effective *Miranda*

warnings, and the defendant knowingly, intelligently, and voluntarily waived his or her

*Miranda* rights before making those statements. *See also State v. Haverty*, 3 Wn. App.

495, 498, 475 P.2d 887 (1970); *State v. Athan*, 160 Wn.2d 354, 380, 158 P.3d 27 (2007).

7

"[C]ourts have generally rejected a per se rule as to when a [defendant] must be readvised of his rights after the passage of time or a change in questioners." *United States v. Andaverde*, 64 F.3d 1305, 1312 (9th Cir. 1995). Instead, courts have considered such factors as whether later statements were close in time to the original advice of rights, with 16 hours, for instance, being deemed sufficiently close in time. *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1129 (9th Cir. 2005). They have considered any circumstances apart from the passage of time that suggest the effectiveness of earlier *Miranda* warnings was diminished. *Id.* "'A rewarning is not required simply because there is a break in questioning.'" *Id.* (quoting *Guam v. Dela Pena*, 72 F.3d 767, 769 (9th Cir. 1995)). That a defendant was in continual custody during questioning is significant, since there is nothing to give the defendant the impression that his rights had changed in any material way. *Id.*; *see also Dela Pena*, 72 F.3d at 769-70 (*Miranda* warnings still effective after 15 hours); *Puplampu v. United States*, 422 F.2d 870, 870 (9th Cir. 1970) (*Miranda* warnings still effective after two days); *Maguire v. United States*, 396 F.2d 327, 331 (9th Cir. 1968) (*Miranda* warnings still effective after three days); *State v. Blanchey*, 75 Wn.2d 926, 931, 454 P.2d 841 (1969) (*Miranda* warnings still effective after four days).

This court reviews a trial court's findings of fact from a CrR 3.5 hearing to determine if they are supported by substantial evidence in the record. *State v. Gasteazoro-Paniagua*, 173 Wn. App. 751, 755, 294 P.3d 857 (2013). Substantial

evidence supports a factual finding if "a sufficient quantity of evidence [exists] in the record to persuade a fair-minded, rational person of the truth of the finding." *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Whether the trial court's conclusions of law are properly derived from its finding of fact is reviewed de novo. *Id.* "Unchallenged findings of fact [are] verit[ies] upon appeal." *Id.*

*Failure to enter findings and conclusions*

Mr. Frank contends the trial court erred when it failed to enter written findings of fact and conclusions of law in violation of CrR 3.5(c). The State concedes that findings and conclusions were never entered. CrR 3.5 requires the trial court to enter written findings of fact and conclusions of law, so the failure to do so is error. CrR 3.5(c); *State v. Miller*, 92 Wn. App. 693, 703, 964 P.2d 1196 (1998), *review denied*, 137 Wn.2d 1023, 980 P.2d 1282 (1999). The error is harmless if the court's oral findings are sufficient for appellate review. *Id.*

The error was harmless here. In the trial court, defense counsel challenged the admission of the statements on only two grounds: (1) that Detective Bowling questioned Mr. Frank about a different burglary, not the one for which Mr. Frank was on trial, and (2) there was no testimony about how much time passed between the *Miranda* warnings and the questioning by Officers Schaefer and Reyes.

The trial court made findings on the essential aspects of a knowing, voluntary and intelligent waiver of rights: that Mr. Frank was read his rights, that he acknowledged

understanding them, that he never asked for an attorney, and that there was no evidence

of threats or coercion. As for the subject matters of the interviews, the trial court found

that Detective Bowling told Mr. Frank that he wanted to question him about "burglaries,

plural, not singular." RP at 33. It found that there was no evidence that the time period

over which the questioning occurred resulted in any form of coercion or affected Mr.

Frank in any way.

Mr. Frank also argues that the trial court did not make sufficiently particular

findings on the basis on which he would have known he was free to leave. But this was

not a basis on which Mr. Frank ever contended his waiver of rights was invalid. Findings

are not needed on an issue that cannot be raised on appeal. *State v. Spearman*, 59 Wn.

App. 323, 325, 796 P.2d 727 (1990) (issue cannot be raised on appeal that was not raised

during the CrR 3.5 or the fact-finding portions of the proceedings).

The oral findings are sufficient for appellate review.

*Denial of Mr. Frank's objections to admission*

Mr. Frank contends that notwithstanding the sequential nature of the interviews,

he should have been given fresh *Miranda* warnings before being interviewed by Officers

Schaefer and Reyes.

Mr. Frank primarily relies on *Zappulla v. New York*, 391 F.3d 462 (2d Cir. 2004),

to support his argument the statements to police should have been suppressed. In

*Zappulla*, police arrested the defendant near a motel based on a police report stating the

10

defendant stole his girlfriend's fur coat and jewelry. *Id.* at 465. At the time of his arrest, police read the defendant his *Miranda* rights, and then attempted to question the defendant about the theft. The defendant refused to talk about the theft, but spoke about other matters. While speaking with the defendant, police found a motel room key on the defendant's person and went to the corresponding room. When police went inside the room, police discovered the stolen fur coat and the dead body of a woman. In the meantime, the defendant managed to escape police custody. While attempting to run away, the defendant was hit by a car and taken to the hospital.

The following day, the defendant was returned to police custody. Police then questioned the defendant about the murder without reading the defendant his *Miranda* rights. The defendant initially stated he wanted a lawyer, but then confessed to the murder when police told the defendant if he wanted a lawyer, they could no longer talk to him. The defendant was then charged with intentional murder.

At trial, the court rejected the defendant's motion to suppress the statements made to police officers. The prosecutor relied heavily on the defendant's confession, and the jury returned a guilty verdict on the intentional murder charge. On appeal, the state appeals court found the confession was defective because "24 hours had elapsed between the initial questioning of [the defendant], where *Miranda* warnings were given, and the subsequent interrogation, where the officers questioned him without *Miranda*

11

warnings about a different crime and custody was not continuous." *Id.* at 465-66.

However, the appeals court still affirmed the conviction, finding the failure to suppress

the confession was harmless.

Our facts are easily distinguishable from the facts in *Zappulla*. Mr. Frank's

presence and availability for questioning was continuous and the crimes were not

different. The trial court found, and the evidence supports its finding, that Detective

Bowling told Mr. Frank he needed to talk to him about burglaries (plural), and they did

have some conversation about the 115 South Main burglary. Mr. Frank does not dispute

he was properly advised of his rights by Detective Bowling. While the record is unclear

how much time elapsed between Detective Bowling's reading of *Miranda* rights and the

questioning by Officers Schaefer and Reyes, the evidence establishes that it was no

longer than the three officers' overlapping shifts on December 27. It supports the trial

court's finding that it was not a time frame that resulted in any form of coercion or

affected Mr. Frank in any way; it is reasonable to infer that it extended from the

afternoon into the evening. Courts have affirmed a trial court's decision that *Miranda*

warnings were still effective after up to four days. *See Blanchey*, 75 Wn.2d at 931.

Fresh *Miranda* warnings were not required before the questioning conducted by

Officers Schaefer and Reyes. Mr. Frank's statements were properly admitted.

No. 37480-7-III
*State v. Frank*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Lawrence-Berrey, J.

13