# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>          v.<br><br>JASPER LEVI PHILLIPS,<br><br>               Appellant. | No. 83433-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

APPELWICK, J. — A jury convicted Phillips of multiple counts after a brutal home invasion. Phillips contends the court erred by admitting his statements to police officers and two notes allegedly passed to his coconspirator in the jail. Phillips's statements to police officers were properly admitted, because he did not unequivocally revoke his waiver of his right to silence. However, the trial court erred by admitting his notes from the jail. The State argued these notes served as a basis for the jury to find as an aggravating circumstance that Phillips showed an egregious lack of remorse. We affirm the convictions, but reverse the aggravating circumstance finding and remand for resentencing.

## FACTS

In the early hours of the morning, Jasper Phillips and his girlfriend Clara Rood entered Robert Pullman's home. Pullman, Rood's stepfather, was sleeping. He awoke to blows to his head. Phillips and Rood beat Pullman with a metal object and then duct taped him to an office chair. Phillips and Rood spent about two

Citations and pin cites are based on the Westlaw online version of the cited material.

hours going through the house and gathering various items and loading them into Pullman's two trucks. Then Phillips and Rood rolled Pullman, still taped to the chair, into the bathroom. They closed him in the bathroom and secured the door with a wire so Pullman could not open it. Phillips and Rood left in Pullman's trucks.

After the pair left, Pullman managed to free an arm, reach for his moustache scissors, and cut himself free from the tape. He was able to pull the door loose from the wire. After escaping, Pullman discovered that Phillips and Rood had cut the phone lines. He walked to the neighbors' house, arriving at their door bleeding profusely from his head with large wounds on his arms. The neighbors originally thought Pullman had been attacked by a bear.

The police were alerted to the incident. A sheriff's deputy saw Phillips driving one of Pullman's stolen vehicles. The deputy activated his lights and sirens to stop the vehicle. Rather than yield, the truck increased its speed and led the deputy on a chase. The truck crashed into a van and rolled. Phillips attempted to flee the scene but was apprehended.

The State charged Phillips with two counts of theft of a motor vehicle and one count each of attempted murder in the first degree, assault in the first degree, robbery in the first degree, kidnapping in the first degree, burglary in the first degree, and identity theft in the first degree.

Prior to the trial, the court conducted a CrR 3.5 hearing to determine the admissibility of the statements Phillips made to a detective after his arrest. The

detective testified that he took Phillips to an interview room and read his Miranda[1] warnings. Phillips said that he understood his rights and began talking about the car chase and accident. When the detective asked about the events at Pullman's house, Phillips asked something similar to, "You mean you could go get me an attorney right now if I wanted one?" The detective responded that Phillips had the right to an attorney if he wished. Phillips then went on to describe the incident at Pullman's house.

Phillips testified that he was taken to the hospital and given intravenous pain medication that made everything "a little blurry." Phillips was then transported to jail and questioned. According to Phillips, he asked for an attorney but one was not provided. He testified that he had memory issues and that events of that day were "very fuzzy." But, requesting an attorney "was one of the things that stands out" in his memory.

The trial court concluded that Phillips understood his rights and intelligently and voluntarily waived his right to remain silent. The court also determined that Phillips did not make an unequivocal invocation of his right to an attorney. "Indicating that he understood his rights and had asked if he could have the attorney right now and being advised again that he did have a right to an attorney is not an unequivocal invocation of his right to counsel in this case." The trial court ruled Phillips's statements admissible.

---

[1] Miranda v. Arizona, 384 U.S. 436, 461, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

A jury acquitted Phillips of attempted murder in the first degree but convicted him of the other charges. The jury also returned special verdicts finding Phillips armed with a deadly weapon for several of the charges and that he demonstrated "an egregious lack of remorse" on the first degree kidnapping charge.

The trial court sentenced Phillips to the top end of the sentencing range on every offense. Based on the egregious lack of remorse aggravator, the trial court imposed an exceptional sentence of life in prison for the kidnapping conviction. The total sentence amounted to life plus 349 months of incarceration.

Phillips appeals.

DISCUSSION

I.  Right to Counsel

Phillips argues that he made an unequivocal request for counsel and the trial court erred by ruling his subsequent statements to police were admissible. Phillips challenges the trial court's findings that his statements were voluntary and did not amount to a clear and unequivocal invocation of his rights.

The federal and Washington State Constitutions guarantee the right against self-incrimination. U.S. CONST. amends V, VI, XIV; WASH. CONST. art. I, § 9. Before any custodial interrogation, a suspect must be advised of their Miranda rights to silence and an attorney. State v. Piatnitsky, 180 Wn.2d 407, 412, 325 P.3d 167 (2014). "The defendant may waive this right, but there can be no questioning if he 'indicates in any manner or at any stage of the process that he wishes to consult with an attorney before speaking.'" State v. Nysta, 168 Wn. App. 30, 41, 275 P.3d 1162 (2012) (emphasis omitted) (quoting Miranda v. Arizona, 384 U.S. 436, 444-

4

45, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)). A suspect may request an attorney at any time. State v. Radcliffe, 164 Wn.2d 900, 906, 194 P.3d 250 (2008). But, once the right to counsel has been waived, the request for an attorney must be explicit. Id. "[T]he suspect 'must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'" Nysta, 168 Wn. App. at 41 (quoting Davis v. United States, 512 U.S. 452, 459, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994)).

In reviewing a trial court's decisions after a CrR 3.5 hearing on the admissibility, we review the findings of fact to determine if they are supported by substantial evidence. State v. Gasteazoro-Paniagua, 173 Wn. App. 751, 755, 294 P.3d 857 (2013). We review de novo whether the trial court's conclusions of law are properly derived from the findings of fact. Id.

Phillips contends the trial court erred in the finding of fact that he "asked if the Detective would be able to find an attorney for him" and the conclusion of law that it "was not a clear and unequivocal invocation of his rights." Phillips claims he demonstrated his intent to have representation by an attorney. But, the detective's testimony shows that Phillips posed a question along the lines of "'If I wanted an attorney right now, you could you go get me one?'" or "'Could you get me an attorney right now if I wanted one.'" The detective stated that he did not believe Phillips was requesting an attorney: "I don't believe that that was his intentions at that point, that he wanted an attorney right now. He was simply asking me if I

could reach out to one." According to the detective, Phillips "didn't imply that he was wishing to speak with an attorney."

Phillips did not demand an attorney. Rather, he posed a question or hypothetical to the detective. This was not a clear and unequivocal request for counsel. The trial court did not err in concluding that Phillips properly waived his right to counsel and did not subsequently invoke it.

## II. Kidnapping in the First Degree

Phillips contends that the State presented insufficient evidence to convict him of kidnapping in the first degree.

In a criminal prosecution, the State must prove all elements of the charged crime beyond a reasonable doubt. State v. Armstrong, 188 Wn.2d 333, 343, 394 P.3d 373 (2017). "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and we draw all reasonable inferences from the evidence in favor of the State. Id.

According to the jury instructions, to convict on the charge of first degree kidnapping, the jury was required to find beyond a reasonable doubt that Phillips intentionally abducted Pullman "to facilitate the commission of robbery in the first

degree or flight thereafter" or "to inflict bodily injury."[2]  The jury instructions defined "abduct" as "to restrain a person by either secreting or holding the person in a place where that person is not likely to be found or using or threatening to use deadly force."

Phillips argues that the State failed to present sufficient evidence to demonstrate that he restrained Pullman for a purpose independent of the intent to commit robbery.  But, the Washington Supreme Court rejected this argument in State v. Berg, explicitly stating, "[W]hen kidnapping and robbery are charged separately, whether the kidnapping activity is incidental to the robbery is immaterial to the sufficiency of the evidence of kidnapping."  181 Wn.2d 857, 860, 337 P.3d 310 (2014).  The fact that Phillips restrained Pullman in order to facilitate the robbery does not impact the sufficiency of the evidence analysis.

The State presented evidence that Phillips and Rood duct taped Pullman to the office chair and took items from around the house.  They rolled the chair into the bathroom and secured the door closed from the outside.  Phillips and Rood also cut the phone lines.  This evidence was sufficient for the jury to find beyond a

---

[2] The jury instruction is based on first degree kidnapping as established by RCW 9A.40.020:

A person is guilty of kidnapping in the first degree if he or she intentionally abducts another person with intent:
(a) To hold him or her for ransom or reward, or as a shield or hostage; or
(b) To facilitate commission of any felony or flight thereafter; or
(c) To inflict bodily injury on him or her; or
(d) To inflict extreme mental distress on him, her, or a third person; or
(e) To interfere with the performance of any governmental function.

reasonable doubt that Phillips secreted Pullman in a place where he was not likely to be in order to complete the robbery and getaway.

III.    Egregious Lack of Remorse Aggravator

Phillips argues the State provided insufficient evidence for the jury to conclude that he demonstrated an egregious lack of remorse which the trial court relied on to impose an exceptional sentence.

The Sentencing Reform Act of 1981 allows for imposition of a sentence outside the standard sentencing range for an offense if there are compelling reasons.  RCW 9.94A.535.  Among those reasons is the aggravating circumstance that "[t]he defendant demonstrated or displayed an egregious lack of remorse." RCW 9.94A.535(3)(q).  The facts supporting the aggravating circumstance must be proved to a jury beyond a reasonable doubt.  RCW 9.94A.535(3), .537(3). "[L]ack of remorse must be of an aggravated or egregious character to constitute an aggravating factor."  State v. Russell, 69 Wn. App. 237, 251, 848 P.2d 743 (1993).

In reviewing the sufficiency of the evidence for an aggravating factor, we use the same standard of review for the sufficiency of the elements of the crime. State v. Zigan, 166 Wn. App. 597, 601, 270 P.3d 625 (2012).  "We review the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the presence of the aggravating circumstances beyond a reasonable doubt."  Id. at 601-02.  Here, the court instructed the jury that the egregious lack of remorse aggravator required that "the defendant's words or conduct demonstrated extreme indifference to harm resulting from the crime or

8

were affirmatively intended to aggravate that harm." The jury could consider, "whether the defendant's words or conduct (a) increased the suffering of others beyond that caused by the crime itself; (b) were of a belittling nature with respect to the harm suffered by the victim; or (c) reflected an ongoing indifference to such harm."

In support of the aggravating factor, the State relied on two jail notes allegedly written between Phillips and Rood during their time in jail. The notes include statements that the writer should have just killed Bob and was sorry that they did not. In closing arguments, the State told the jury

> I would argue the defendant saying in the jail note when talking about whether they were going to kill Mr. Pullman, the defendant said, "Sorry we didn't." Sorry we didn't, meaning things would have been a lot better off for him if they'd killed Mr. Pullman and gotten away with it. That's someone who has no remorse for what they did.

The jail notes provided the only evidence toward the egregious lack of remorse aggravator.[3]

Phillips argues the notes were not sufficiently identified or authenticated as required by ER 901(a).

We review a trial court's admission of evidence for abuse of discretion. State v. Bradford, 175 Wn. App. 912, 927, 308 P.3d 736 (2013). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable ground. Id. Application of the wrong legal standard is an abuse of discretion. State v. Salgado-Mendoza, 189 Wn.2d 420, 427, 403 P.3d 45 (2017).

---

[3] The jury heard testimony that Phillips told the detective, "'[I]f this morning had gone worse for Bob it would have been better for us.'" The State did not raise this statement during closing arguments.

9

ER 901(a) provides, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." This requirement is satisfied "if it introduces sufficient proof to permit a reasonable juror to find in favor of authenticity or identification." State v. Payne, 117 Wn. App. 99, 106, 69 P.3d 889 (2003). The purpose of the rule is to establish a threshold requirement to ensure that evidence is what it purports to be. Id.

Over Phillips's objection, the trial court admitted two notes allegedly written between Phillips and Rood in the jail. The court stated, "I think they become a part of the case file. You have had them for some time. I'll allow them to come in." The court's ruling alludes to ER 904, which allows for certain documents to be admissible without further identification if they are offered more than 30 days before trial and unless objection is made within 14 days. But, ER 904 applies only in civil cases. ER 904(a). To the extent that the trial court considered the length of time the jail notes had been in the case file as a foundation for admission, it relied on the incorrect rule. Application of the wrong legal standard is an abuse of discretion. Salgado-Mendoza, 189 Wn.2d at 427. The trial court made no assessment of the authenticity of the documents as required under ER 901. Admission of the jail notes was an abuse of discretion.

Because the jail notes provided the sole foundation for the egregious lack of remorse aggravator, their admission was prejudicial error. See State v. Tharp, 96 Wn.2d 591, 599, 637 P.2d 961 (1981) ("[E]rror is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially

10

affected had the error not occurred"). Without the jail notes, the evidence is insufficient for the jury to have found the presence of the aggravating circumstance beyond a reasonable doubt. Reversal and remand for resentencing is required. Upon resentencing, the trial court should consider whether to strike the community custody supervision fees.

We affirm the convictions, but reverse the aggravating circumstance finding and remand for resentencing.

_Appelwick, J._

WE CONCUR:

_Dwyer, J._      _Andrus, A.C.J._